## HAAS ET AL. *v.* KUNDTZ.

*Charge to jury — Expert testimony upon hypothetical question —
Premises to question to be established by preponderance of
evidence — Error to reverse judgment unless charge preju-
dicial, when.*

1. Where an opinion of an expert witness is given on a trial to
a jury in answer to a hypothetical question, the court should
instruct the jury that it is incumbent on the party calling the
witness to establish the premises included in the question by a
preponderance of the evidence.

2. Where an instruction which is open to criticism has been given
by a trial court to a jury and the record discloses that the
instruction could not have resulted in prejudice to the com-
plaining party, it is error for a reviewing court to reverse the
judgment of the trial court upon that ground.

(No. 14975 — Decided May 16, 1916.)

ERROR to the Court of Appeals of Cuyahoga
county.

This proceeding was brought by John Haas
against Theodor Kundtz in the common pleas of
Cuyahoga. The plaintiff died after the trial in
the common pleas court and the executrix was
substituted as plaintiff.

It is alleged in the petition that on or about July
19, 1912, plaintiff was in the employ of the de-
fendant as a day laborer in defendant's manufac-
turing plant in the city of Cleveland; that in the
morning of said day, pursuant to the orders and
directions of the defendant, he was at work in
the machine room on the fifth floor, operating a
cut-off or circle saw, and was sawing kindling
wood from scrap pieces of wood and timber, when

the defendant's foreman in charge of the machine room, and invested by the defendant with superior authority and control over plaintiff and exercising such control, recklessly and negligently threw and dropped upon the saw and saw table, where plaintiff was engaged, a large armful of loose and irregular shaped pieces of wood, causing one of said pieces, which was about 19 inches long and several inches in width, to be caught by the saw, which was revolving with great velocity, and hurled with great force and violence against the head and face of the plaintiff and seriously and permanently injuring him, as hereinafter described.

It is alleged that defendant at all of the times referred to employed more than five workmen or operatives regularly in the same business aforesaid and in and about the same establishment, and that he has never accepted or elected to avail himself of the provisions of the act of the general assembly providing for the creation of a state insurance fund and a liability board of awards.

It is also averred that defendant at the time referred to wholly failed and neglected to maintain over and around said saw a proper, suitable and sufficient guard or other attachment to effectually prevent pieces of wood coming in contact therewith, and in that respect was reckless and negligent.

Plaintiff alleges that solely by the negligence of defendant he was struck in the face by said piece of wood and so injured that he sustained a severe and painful contusion on the face about his eyes

and nose; that the flesh about the nose, eyes and forehead was severely torn and lacerated and the bones underneath severely injured; that immediately after being struck plaintiff became nauseated and vomited and shortly thereafter was compelled to leave his work and go home where, with the exception of a few days, he has ever since remained; that his face about his eyes and nose became greatly swollen and very painful and for a long time required the constant application of poultices in order to alleviate plaintiff's suffering; that the eyes and nerves about the nose and eyes were so injured and affected that plaintiff has been rendered totally blind; that as a result he is constantly afflicted with severe pains in the head and with dizziness and has sustained a loss in weight of about sixty pounds; that he is no longer able to sleep soundly as he was well able to do prior to being injured as above described; that prior to being injured he enjoyed good health and was free from pain, and ever since has suffered extreme and excruciating pain and agony; that he has been put to great expense for medical attention and treatment, and that he will be put to still greater expense and incur still greater indebtedness in that regard in the future.

The defendant by his answer admitted that the plaintiff was employed by him at his manufacturing plant, at the time stated in the petition, and that while so employed the plaintiff sustained some injuries, but denied that the injuries so received were of the nature, character or extent stated in the

petition, and denied every other allegation in the petition contained.

On the trial in the common pleas there was a verdict and judgment for the plaintiff. This judgment was reversed by the court of appeals and the proceeding in this court is brought to reverse the latter judgment and affirm the former.

*Messrs. Payer, Winch & Rogers,* for plaintiffs in error.

*Messrs. Westenhaver, Boyd & Brooks; Mr. Albert Lawrence* and *Mr. W. C. Pollner,* for defendant in error.

JOHNSON, J. As shown by its journal entry the court of appeals reversed the judgment of the trial court solely on the ground of "error in the charge of the court to the jury; no other error appearing in the record."

The record is unusually large. There was, however, very little contention as to the situation or the occurrences on the day of the injury. It is conceded that the plaintiff became blind more than a year afterwards, and the most important issue of fact, the one around which the contest was chiefly waged, was whether the blindness was caused by the injury received on the day of the accident.

The effort of the plaintiff was directed to the maintenance of his position that the injury received at the bench was the direct and proximate cause of his ultimate blindness in both eyes.

The contention of the defendant was that the blindness of the plaintiff resulted from causes wholly disconnected with the injury referred to in the petition.   The greater part of the testimony of the defendant was introduced in an effort to show that the blood of the plaintiff was affected by a syphilitic taint, either hereditary or acquired, and that this was the cause of the blindness.   The trial court and the court of appeals in the performance of their duty to examine and weigh the evidence did not sustain the contention of defendant that the verdict was against the weight of the evidence, or excessive.

On the issue as to the cause of the ultimate blindness of the plaintiff a number of physicians were called by the parties as experts.   The burden was upon the plaintiff to show the legal relation of cause and effect between the injury and the blindness; and the length of time between the injury and the ultimate blindness in both eyes naturally impressed upon both parties the great importance and value of expert testimony.

By far the most important, and in truth it may be said to be the crucial, difference between the parties throughout related to the claim of the plaintiff that the sight of his left eye "was entirely gone, or almost entirely gone from the time he was struck."   The hypothetical question put by defendant's counsel to the physicians called by them made no reference to this claim.   They were not asked to answer as to that hypothesis.   In this connection defendant's counsel complain of the following portion of the charge:   "Hypothetical

questions are drawn so as to embrace all of the symptoms, all of the things about the injury—in this case, about the blindness—starting from the time of the injury, starting back of that, may be a man's full life, taking up through the injury, stating in the question all of the facts which would throw light upon the question, and then asking the physician, his physician, as. to whether it was probable or likely that the accident occurred or how the accident might have occurred."

Counsel urge that under that portion of the court's charge the jury would be authorized and required to disregard the opinion of all of defendant's experts, for the sole reason that the question did not embrace the one alleged fact referred to, and that this was error. We think this is too narrow a view of the language. It was, as claimed by defendant, proper for him to omit from his question the statement that the plaintiff became blind or almost blind in his left eye immediately after the accident, because he earnestly contended that the plaintiff had not then, or soon after, become blind in his left eye. But plaintiff contended exactly the opposite. That was a question to be determined by the jury from a preponderance of the evidence. If the jury should find for the defendant on that issue, the force and value of the answers of the experts to his question might be very great; but if the jury should find upon that issue for the plaintiff, manifestly the absence of this important fact from the question of the defendant would very greatly weaken the value of the opinions expressed by the experts. Counsel

on each side were entitled to include in their hypothetical questions such facts as they claimed were shown by the evidence. The evidential facts are generally in dispute and it cannot be known where the jury will find the preponderance to be. Each party has the right to show the scientific conclusions to be drawn from the facts as he claims them to be, subject to the contingency that the jury shall find the facts to be as stated.

The chief complaint made against the charge of the court concerned the following part of it, and it is this portion upon which the court of appeals based its judgment of reversal: "So, if there was any material fact which it was necessary to have for the physician or expert to base his opinion, and that fact was not true or not proven, then, of course, the expert's opinion would necessarily fall because the fact was not there upon which to base such an opinion." And also this: "They simply make their answer, base their answer upon the facts that are submitted to them in the question and, if there is any important fact, material fact, that is in the question which is not true, that is not proven to be true, then the question that the doctor makes his opinion upon, gives his opinion upon that question, then he has given it upon such a statement of facts," etc. The use of the words "material" and "important" is claimed to be erroneous.

It must be kept in mind that the expert testimony related to and was important upon the question whether the blindness of the plaintiff resulted from the injury received on the day of the acci-

dent.   The proximate cause of a result is that
which in a natural and continued sequence pro-
duces the result and without which it would not
have happened.   The burden was upon the plain-
tiff to show that his blindness resulted in a natural
and continued sequence from the blow and without
which it would not have resulted.

The court, at the request of the defendant, be-
fore argument charged the jury as follows:   "I
say to you that the opinions of such experts based
upon facts so assumed are of no value, unless all
of the assumed facts forming the basis of such
opinion are found by the jury to be true, and that
if you find that any fact assumed in the hypo-
thetical question put to any such medical witness
is untrue, then it will be your duty to disregard
the opinion expressed by such medical expert."
And also the following:   "The plaintiff called as
a witness one Dr. William H. Phillips and pro-
pounded to him a hypothetical question in which
it was stated as a fact that from the time the plain-
tiff's left eye was struck on July 19th, 1912, the
sight of his left eye was entirely gone, or almost
entirely gone.

"I charge you that unless you find from a pre-
ponderance of the evidence that the sight of the
plaintiff's left eye was entirely gone, or almost en-
tirely gone, from the time he was struck on July
19th, 1912, then you should entirely disregard the
opinion expressed by said witness in answer to
such hypothetical question."

The proposition asserted by the defendant and
approved by the court of appeals is quoted from

*General Convention of New Jerusalem Church et al.* v. *Crocker et al.*, 7 C. C., 327, 333, as follows: "Logically, if any facts which the evidence does not establish are assumed as a part of the foundation of the expert opinion, the opinion is of no value for the purposes of the case. The theory upon which opinions of experts are admitted is, that the witnesses have knowledge not possessed by the jurors, which forms a foundation for safe conclusions in a particular case."

It is urged that the charge of the court permitted the jury to determine what facts were material or important and what were not so, and that this is not the function of the jury. A fair statement of the view which supports the contention made by the defendant in error is found in the case of *Burk* v. *Reese et al.*, 143 Ia., 496, cited by him. In that case the supreme court of Iowa had before it a charge in which is found the following language: "Should such assumed facts not be supported by the evidence, or should it turn out that such hypothetical questions are in important particulars incorrect, unfair, partial and untrue, no weight whatever can be given to the opinion founded thereon." The court say: "We are constrained to hold that, under the settled rule of our own cases, this instruction cannot be upheld. It leaves the jury to say for itself what facts embodied in the hypothetical question are of so little importance that a failure to establish them by the evidence may be disregarded, and the answer still be allowed weight in reaching a verdict. This we have frequently held to be reversible error."

Substantially this view has been supported in *Fisher* v. *Travelers' Ins. Co.,* 124 Tenn., 450; *People* v. *Foley,* 64 Mich., 148, and *Dudley* v. *Gates,* 124 Mich., 440.

The opposite view is stated in 1 Wigmore on Evidence, Section 680, thus: "It follows as á necessary part of the theory, that if the premises are ultimately rejected by the jury as untrue, the testimonial conclusion based on them must also be disregarded. This is plain enough where a witness has claimed to have personal observation and is disbelieved. It is only where his testimony is based on hypothetical data that the same result needs to be emphasized. But the failure which justifies rejection must be a failure in some one or more important data, not merely in a trifling respect." This proposition finds support in *Taylor* v. *Taylor,* 174 Ind., 670; *Grand Lodge I. O. M. A.* v. *Wieting,* 168 Ill., 408, 3 Syl.; *People* v. *Vanderhoof,* 71 Mich., 158, 176, and *Blough et al.* v. *Parry et al.,* 144 Ind., 463.

We think there is force in the contention that the jury should not be led by the instruction of the court to consider what are material and what are immaterial facts embodied in a hypothetical question. They are to act upon the evidence submitted to them and upon all of the evidence. The expert is a scientific person, and it cannot be known to the jury what he regards as material or immaterial in making up his answers. The correctness of this is sufficiently demonstrated by the testimony of the expert physicians in this case. The only sound theory upon which the expert's opinion is

admitted at all is that he has the knowledge, training and experience with which to form a better opinion on a given state of facts than one not so well equipped. On the other hand there should be no such instruction as would invite a capricious search by the jury into features which might be wholly unimportant and unessential, thereby leading them to reject the testimony of an expert of ability and high character, whose opinion had been formed after a conscientious and successful effort to arrive at true conditions.

The supreme court of Iowa, which has declared and enforced the strict rule above stated in a number of cases before it, said in a very recent case, *Peterson* v. *Brackey,* 143 Ia., 75, 82: "In the case last cited an instruction is criticised which left it to the jury to say whether the statements of fact assumed in the hypothetical questions were 'substantially' correct, but it is not intimated that the case would have been reversed on this ground. It certainly is not necessary that the facts assumed in a hypothetical question shall be proven in every material detail to the dotting of an 'i' and the crossing of a 't,' and, while the court might properly have omitted the word 'substantially,' we can not believe that the jurors were misled by its use."

Take for example the hypothetical question put by the defendant's counsel themselves in this case. The question covers some seven pages of the record and embodies the facts which defendant's counsel believed to be shown by the preponderance of the testimony, concerning the cause of plaintiff's blindness. Now it would be manifestly unjust to

the defendant to so instruct the jury as to lead them to reject the opinion of the four physicians of recognized position whom the defendant had called, simply because they might find one assumption or statement of fact in the seven pages, however unimportant, to be not established by the preponderance of the evidence, although the counsel for the defendant had included the statement in his question in the full belief of its truth. Such a rule would be too technical and would not contribute to the substantial administration of justice. But if it be conceded that the use of the terms "important fact" and "material fact" by the trial court in its charge in this case is properly open to criticism, we think it clear that it could not have been prejudicial to the defendant.

As already stated, the plaintiff propounded to the experts called by him a hypothetical question in which it was stated as a fact that from the time plaintiff's left eye was struck the sight was entirely gone, or almost entirely gone; and, as shown, at the request of defendant's counsel the court charged the jury that "unless you find from a preponderance of the evidence that the sight of plaintiff's eye was entirely gone, or almost entirely gone, from the time he was struck, you should entirely disregard the opinion expressed by said witness in answer to such hypothetical question."

It is perfectly clear from the record that the matter of the blindness or almost blindness in the left eye immediately after the accident was the crux of the case. That was the material, the important, fact in dispute. The jury were distinctly

told that if the plaintiff failed to establish this claim they should disregard the testimony of the plaintiff's experts.

The hypothetical question of the plaintiff was very much shorter than that propounded by the defendant. In the defendant's hypothetical question no reference whatever was made to the claim or assumption that the plaintiff became blind or almost blind immediately after being struck.

The physicians called by defendant at once conceded on cross-examination that if it were shown that blindness in the left eye followed soon after the blow, an entirely different question would be presented.

On reflection it will be seen that any error of the court in the use of the words "material" and "important" did not result in prejudice to the defendant, but was rather in his favor. Because the jury might have found that in defendant's hypothetical question of several pages there was included some assumption which was not sustained and yet under the instruction given if the jury regarded it as not "important" or "material" they would disregard that assumption. They would not treat the expert's "opinion as of no value for the purposes of the case" but would give to the opinion such weight as they believed it to be entitled.

The paramount query is not, Did the hypothetical question *include* elements not proven by the evidence, the importance and materiality of which the jury were permitted to speculate upon? but, Was there *omitted* from the hypothetical question

of defendant a *concededly material* and determinative assumption, which was included in the hypothetical question of plaintiff, and as to which the jury were instructed at request of defendant, that unless they found that plaintiff's assumption was sustained by the evidence they should disregard the opinion of plaintiff's expert? And although this requested charge was given before the argument it was in no degree modified by what was said in the general charge.

The court of appeals well said, "Here, then, were two well defined and distinct theories of the case and the record shows that they were zealously, thoroughly and adequately brought before the jury on the respective sides of the controversy, and it is due to counsel to say the jury were made to understand each theory to the remotest point. Right or wrong in result, what the jury did was not by reason of not being informed as to what each party claimed and was contending for, so far as the case depended on matter of fact."

We are convinced that the strongly corroborated testimony that plaintiff had always been free from eye trouble prior to the injury, taken in connection with the vastly important testimony of plaintiff that he became blind in the left eye soon afterwards, was regarded by the triers of the facts as entitled to great weight.

We think it clear that the learned court was in error in regarding the use of the words referred to by the trial court in its charge to the jury as conclusively prejudicial error.

The judgment of the court of appeals will be reversed and that of the common pleas affirmed.

*Judgment reversed.*

NICHOLS, C. J., DONAHUE, WANAMAKER, NEWMAN and MATTHIAS, JJ., concur.

JONES, J., not participating.