BOWMAN, APPELLEE, *v.* NATIONAL GRAPHICS CORP.,
APPELLANT; KROUSE, ADMR., ET AL., APPELLEES.

[Cite as Bowman v. National Graphics Corp. (1978),
55 Ohio St. 2d 222.]

(No. 77-1182—Decided July 26, 1978.)

*Messrs. Crane, Heltzel & Barridge* and *Mr. Rodger W. Heltzel,* for plaintiff-appellee Bowman.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Thomas M. Taggart* and *Mr. Robert E. Tait,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Michael J. Hickey,* for defendant-appellees, Krouse, Administrator, and Industrial Commission.

*Per Curiam.* The issue to be decided in this cause is whether the agency and the courts below correctly held that a physical disability caused by the performance of one's normal job duties, which disability develops gradually over a prolonged period of time on the job, is a compensable injury within the meaning of R. C. 4123.01(C). Amendatory language was inserted in the statute effective November 2, 1959 (Am. Sub. H. B. No. 470; 128 Ohio Laws 743, 745).

That section then provided and still provides:

" 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."

It is of particular interest that the Bureau of Workers' Compensation and the Industrial Commission are now alleging that they erred in originally allowing ap-

pellee's claim as an "injury" under R. C. 4123.01(C). Their brief states:

"The Bureau and the Commission feel compelled to make this concession [that they erred] since the decision rendered by the Court of Appeals in this case, adopts a definition of 'injury' substantially different than that currently being applied by these agencies, and substantially different from the definition set forth by this Court."

This court has never held a claim such as appellee's to be an "injury" as defined in the statute. We have held that in order to be a compensable injury, a claimant's condition must be "accidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place." *Malone* v. *Indus. Comm.* (1942), 140 Ohio St. 292, paragraph one of the syllabus.

The statutory language we are now required to interpret was the language of *Malone* and post-dated *Malone*. That language was offered as an amendment to proposed House Bill No. 470. In adopting the 1959 amendment, the General Assembly rejected the definition proposed in House Bill No. 470, which would have defined "injury" as follows:

"Injury shall mean any disability or harmful bodily change, traumatic or otherwise in origin or result, received in the course of, and arising out of the injured employee's employment. It shall include the occurrence or aggravation of any disability through the use of any exertion or being subject to any strain. To constitute an injury it shall not be necessary that there be some sudden, unusual unexpected occurrence, or some sudden specific mishap or event, or accidental means."

By adopting the compromise definition of injury it is clear that the General Assembly intended to follow the rule articulated in *Malone*. The words "accidental in character and result" used in the compromise definition are precisely the words which had been used by the court in the second paragraph of the syllabus in *Malone*.

In 1962, this court recognized that legislative intent in the case of *Hearing* v. *Wylie* (1962), 173 Ohio St. 221, at 223, wherein it was stated:

"The conclusion is inescapable to a majority of this court that the General Assembly intended to define 'injury' in the terms of the *Malone* rule."

Under the stated facts of this cause it is clear that we cannot affirm the holding of the court below except by reversing our holding in *Malone* and by ignoring the language chosen by the General Assembly from that case.

Clearly, under the facts of the instant cause there was no occurrence which was unforseen, unexpected, and unusual which produced Bowman's disability. His disability simply developed gradually over a period of time as a result of performing his normal work activities. As a matter of fact, given the type of physical work Bowman performed, his disability may well have been predicted and expected to have developed as a result of normal "wear and tear."

Whether the members of this court believe that gradually occurring "wear and tear" type disabilities resulting from normal employment activities should be compensable, the adoption of such a concept is properly a function of the General Assembly and not a function of the judiciary. Section 35 of Article II of the Ohio Constitution clearly grants the General Assembly that authority, by providing in part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, *determining the terms and conditions upon which payment shall be made therefrom.*" (Emphasis added.)

In defining the term "injury" in R. C. 4123.01(C), the General Assembly outlined one of the most basic conditions for participation in the Workers' Compensation

fund. This being so, it was the obligation of the Court of Appeals below to apply the enacted law rather than to attempt to amend it.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, W. BROWN and P. BROWN, JJ., concur.

CELEBREZZE, SWEENEY and LOCHER, JJ., dissent.

SWEENEY, J., dissenting. I must dissent to the majority's conclusion that the appellee's injury is not compensable under the Act. In coming to its conclusion, the majority has ignored the legislative response to this court's prior rulings as evidenced in the changes that have been made in the statutory definition of the term "injury," and has retained a distinction or test regarding the compensability of a work-related disability not founded on the statutory language or supported by the purposes of the Act.

In 1911, a voluntary system of workmen's compensation was introduced under former G. C. 1465-59 (102 Ohio Laws 524, 529) which provided coverage to those workers of employers participating in the plan who were "injured in the course of their employment, wheresoever such injury has occurred, and which have not been purposely self-inflicted * * *."

Pursuant to the 1912 Amendment to the Ohio Constitution, Section 35 of Article II granted the General Assembly the power to pass a compulsory Workmen's Compensation Act, stating:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers * * * ."

Subsequently, the General Assembly enacted Am. S.

B. No. 48, 103 Ohio Laws 72, 79, which provided that employees qualifying under the plan who were "injured" were entitled to share in the Fund, and provided further that dependents of qualified employees who were killed "in the course of employment" were also entitled to share in the Fund.

As noted in *Fassig v. State, ex rel. Turner* (1917), 95 Ohio St. 232, 236, "the paramount purpose of the [constitutional] amendment was to leave no doubt as to the power of the legislature to pass a *compulsory* act for the establishment of a state insurance fund to be administered by the state, to which fund employers should be compelled to contribute." (Emphasis *sic*.)

The *Fassig* court explained the basic rationale of the constitutional amendment thusly at pages 236-237:

"The sentiment which brought about these consecutive advance steps was of slow but sure growth. It came to be believed that employees should receive compensation for injuries received in the course of their employment, without reference to questions of negligence, unless the injury was caused by their own wilful act; that as a matter of justice, based upon scientific considerations, injuries to workmen in the course of their employment, which were not caused by their own wilful act, should be regarded as a charge upon the business in which they were engaged. This principle and the position in the line of causation which employers sustain in industrial pursuits, are the foundations upon which rest the enactments to compel employers to contribute to state compensation funds. The obligation which arises from that basic relation has been sanctioned by the judgment of society as necessary to the public welfare." See, also, paragraph one of the syllabus in *Indus. Comm. v. Gintert* (1934), 128 Ohio St. 129.

Importantly, in paragraph five of the syllabus in *Fassig, supra* the court defines "injury," as that term was employed in the Constitution and statute, as referring only to "an injury which is the result of or arises out of the employment." The court noted at page 247, that "[i]t was

plainly the intention of the framers of the amendment, and of the statute, to provide for compensation only to one whose injury was the result of or connected with the employment, and would not cover any case which had its cause outside of and disconnected with the employment, although the employe may at the time have been actually engaged in doing the work of his employer in the usual way.''

The requirement that an injury be ''accidental'' to warrant compensation came into being in a series of early Ohio cases wherein this court distinguished between injuries and occupational diseases. *Indus. Comm.* v. *Brown* (1915), 92 Ohio St. 309; *Indus. Comm.* v. *Cross* (1922), 104 Ohio St. 561; *Renkell* v. *Indus. Comm.* (1923), 109 Ohio St. 152.

In support of the distinction, this court noted that the constitutional amendment empowering the General Assembly to enact a compulsory workmen's compensation plan provided that laws may be passed to compensate workers in the specific situations of death, injuries, *and* occupational diseases, and that it was commonly recognized at the time of enactment of the Workmen's Compensation Act that occupational diseases, which at common law were never cause for suit against the employer, constituted a special area of concern for the General Assembly. *Brown, supra,* 314-317. Thus, when the General Assembly provided compensation for injuries sustained in the course of employment, it was not at the same time providing coverage for occupational diseases. Such coverage would require specific legislation.

The notion that a disability to be compensable must be the result of an accident stems from this court's observation in *Brown, supra,* at 316-317, that the social harm the Act was meant to correct was the inability by injured workers of bringing successful negligence suits against their employers for injuries sustained as a result of industrial accidents. The court appeared to be stating that if the injury would not have enabled the employee to bring

suit at common law, it would not be compensable under the Act.

The requirement that a disability be accidental before qualifying as a compensable injury became firmly entrenched in *Indus. Comm.* v. *Franken* (1933), 126 Ohio St. 299, wherein the court denied the claim of a widow whose husband had died of heart failure apparently caused by severe muscular strain. The facts of the case indicate that as part of the decedent's job duties as a pressman, he was required to lift heavy dyes on occasion.

Rather than focusing its attention on whether the decedent's heart failure was caused by his employment, the *Franken* court noted, at page 300, that no "accident" as the term is ordinarily understood had occurred; *i. e.,* there was "no evidence whatever of any extraordinary or unusual happening in and about Franken's work preceding his illness." The court concluded, at page 301, that "[i]mpairment of physical condition occurring from constant and continued labor, no matter how heavy or arduous it may be, is not covered by the Workmen's Compensation Law." Thus, during this period of development in the law, although the employee may have proven that his injury was the result of his employment, such injury would not be compensable under the Act unless the employee could demonstrate that his injury was the result of an accidental occurrence.

Application of the *Franken* holding to back injury cases is found in *Matczak* v. *Goodyear Tire & Rubber Co.* (1942), 139 Ohio St. 181, wherein this court held that a claimant was not entitled to share in the Fund since his injury was not "accidental in origin and cause."

In 1937, the General Assembly adopted a specific definition for the term "injury." G. C. 1465.68 (117 Ohio Laws 109) provided:

"The term 'injury' as used in this section and in the workmen's compensation act shall include *any* injury *received in the course of,* and *arising out of, the injured employee's employment.*" (Emphasis added.) The Gener-

al Assembly's use of the word "any," its adoption of language first employed by the *Fassig* court, and the noticeable exclusion of the requirement of accidental occurrence, evidenced a legislative intent that the purposes of the Act as first enounced in *Fassig* were to be adopted; *i. e.*, that all injuries caused by one's employment were to be compensable under the Act and treated as part of the cost of the employer in carrying on his trade or business.

In the first case arising after passage of the new statute, *Malone v. Indus. Comm.* (1942), 140 Ohio St. 292, this court was confronted with the issue of whether death resulting from heat prostration sustained by an employee while performing his normal job duties at a foundry was compensable. Clearly, before the 1937 amendment, under the *Franken* holdings, this injury would not have been compensable, since there was no accidental means causing the employee's death.

However, noting that the General Assembly defined the term "injury" in broad terms, this court found that the death resulting from the injury was compensable, hold-fered by an employee as a result of the circumstances and ing in paragraph four of the syllabus:

"Heat exhaustion, suddenly and unexpectedly suf-requirements of his employment subjecting him to a greatter hazard than that to which members of the general public are subjected, in this case by reason of working in a superheated foundry resulting in his death within twelve hours after the attack, constitutes an accidental traumatic injury under the Workmen's Compensation Act of this state."

Importantly, the *Malone* court did not dispense with the requirement of accidental injury, but it broadened the scope of the requirement to include injuries which are "accidental in character and result"; *i. e.*, injuries that are "unforeseen, unexpected, and unusual." Paragraph two of the syllabus.

In *Maynard v. B. F. Goodrich Co.* (1944), 144 Ohio St. 22, this court held that an employee's death resulting

from complications arising from a sudden straining back injury sustained on the job was compensable. Although there was no accidental means in the sense that the employee was performing his normal job duties when he was injured, the court found that the straining injury was accidental in character and result, and thus compensable.

However, in the subsequent cases of *Dripps* v. *Indus. Comm.* (1956), 165 Ohio St. 407, and *Artis* v. *Goodyear Tire & Rubber Co.* (1956), 165 Ohio St. 412, the test of external accidental means was reinstated by a majority of this court in determining whether an injury was compensable. In *Dripps*, this court held that a claimant was not entitled to participate in the Fund where he sustained a shoulder injury in controlling the horizontal movement of a power operated boom, despite the fact that at the time of his injury the claimant was required to exert a greater pull than normally required on the line in order to move the boom. In *Artis*, a claimant was denied compensation for a back injury sustained while stacking certain reroll liners although, at the time of the injury, claimant was required to lift the liners an additional two feet above the height normally required. In both cases, the majority of the court found that the absence of an external sudden mishap causing the injuries was determinative.

Importantly, Judge Zimmerman noted in a dissent at page 411:

"It seems to me that the majority opinion in its plain implications, at least, represents a return to this court's position prior to the amendment of old Section 1465-68, General Code. That statute as amended, presently Section 4123.01, Revised Code, defines 'injury' as including '*any* injury received in the course of, and arising out of, the injured employee's employment.' [Emphasis *sic*.]

"Surely there was a purpose in adopting this amendment and to my mind that purpose was to broaden the term, 'injury,' to embrace injuries accidental in character and result as well as those produced or caused by accidental means."

Because the *Dripps* holding did not specifically overrule *Malone*, the court in *Davis* v. *Goodyear Tire & Rubber Co.* (1959), 168 Ohio St. 482, was confronted with choosing between two irreconcilable lines of cases. In *Davis*, an employee sought participation in the Fund for a back injury, aggravating a pre-existing back condition, sustained while exerting extra effort to perform a required job duty. The majority of the court applied the *Dripps* decision, concluding that:

"The alleged injury suffered * * * was not a physical or traumatic damage or harm accidental in character and as a result of external and accidental means in the sense of being the result of a sudden mishap, occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place."

Judge Bell concurred in the opinion, noting that to recede from the *Dripps* holding at this point would result in an unacceptable inconsistency. In addition, he called upon the General Assembly to correct any error the court may have made in applying the *Dripps* test for determining the existence of a compensable injury under the Act.

In extensively tracing the history of the construction of the Act by this court in a dissenting opinion, Judge Taft, at page 485, noted that the requirement that a compensable injury be caused by accidental means as set forth in *Franken* and reinstated in *Dripps* was rejected by the General Assembly in 1937 when it provided that "any" injury received in the course of and arising out of the employment is compensable, and thus the *Malone* rule should be followed. Judges Zimmerman and Herbert concurred in this dissenting opinion.

As if in response to Judge Bell's concurring opinion in *Davis, supra*, at 484, in the latter part of 1959 the General Assembly added to the definition of the term "injury" contained in R. C. 4123.01(C) (former G. C. 1465-68) the phrase "whether caused by external accidental means or accidental in character and result." (128 Ohio Laws 743, 745.) In clarifying the definition of the term "injury," the

General Assembly also provided in R. C. 4123.95 that the workmen's compensation law should be liberally construed in favor of employees and their dependents.

In discussing the impact of this new definition for "injury," this court noted in *Hearing* v. *Wylie* (1962), 173 Ohio St. 221, 223, that "[t]he conclusion is inescapable to a majority of this court that the General Assembly intended to define 'injury' in the terms of the *Malone* rule and in terms of Judge Zimmerman's dissent in *Dripps*."

In the *Hearing* case, an employee died two weeks after sustaining at his place of employment a ruptured appendix resulting from lifting a 100-pound section of beef from a station wagon to his shoulder. There is no indication from a reading of the facts of the case that the employee was performing other than his normal job duties at the time of the injury. But for the fact that the employee's injury occurred prior to the amendment of the statutory definition of "injury," that court would have held the death resulting from the injury compensable.

As can be observed from a review of the legislative history of R. C. 4123.01(C), the General Assembly's response to the prior holdings of this court defining the parameters of a compensable injury has consistently been that of including within the definition those disabilities which this court had ruled as non-compensable in its prior pronouncements. Thus, the statutory definition of "injury" as it reads presently is open-ended. The phrase "whether caused by external accidental means or accidental in character and result" cannot be interpreted as setting forth an additional condition precedent for compensation for an injury. Rather, when read in light of the legislative history of the section, it is apparent that the present definition merely restates the 1937 definition that *any* injury received in the course of, and arising out of, the injured employee's employment is compensable irrespective of whether such injuries come under the *Dripps* or *Malone* rule.

Although the back injury suffered by the claimant in this cause did not result from an accidental means as re-

quired in *Dripps*, or did not occur suddenly and unexpectedly at a specific identifiable moment as was the situation in *Malone*, appellee's injury should be compensable, since it was received in the course of and arising out of the employee's employment.

The majority, in denying appellee's claim under the Act, found that the compromise definition for the term "injury" adopted by the General Assembly in 1959 clearly evidenced an intent that the term "injury" be defined under the *Malone* rule.

However, the majority overlooks the fact that the General Assembly also provided in the definition that "injury" includes any injury caused by external accidental means. No one has contended that the General Assembly, by employing such language, intended to adopt the *Dripps* test. Similarly, it can not be contended that the General Assembly, by providing that an "injury" includes any injury accidental in character and result, intended to adopt the *Malone* rule. Under the statutory language, both tests either constitute requirements for determining compensable injuries, or constitute examples of situations included under the general provision that *any* injury received in the course of, and arising out of, the injured employee's employment is compensable. Because the *Dripps* test and *Malone* test are mutually exclusive, they clearly can only constitute examples of situations in which injuries are compensable.

The majority cites the *Malone* rule as providing that "* * * a claimant's condition 'must be accidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place.' "

It is noteworthy that the majority chose only the first paragraph of the syllabus in *Malone* as the holding in the case, the same paragraph the *Dripps* and *Artis* courts employed in denying claimants a share in the Fund. The emphasis on the occurrence of a sudden mishap has already misled this court on prior occasions when deter-

mining compensable injuries under the Act and it is disquieting to find the court again resurrecting this historically erroneous concept.

The effect of the majority's holding is to distinguish between an employee, suffering from a gradual worsening back condition, who lifts an unusually heavy object normally not required in his job, and an employee, also suffering from a gradual worsening back condition, who simply is unable to perform further lifting on the job. Although both situations may clearly involve injuries caused by or arising out of the employee's employment, the majority would hold that only the employee in the former situation would have sustained a compensable injury.

Such a result directly contravenes the purposes of the Act, and completely lacks any rational basis. The employer, as the *Fassig* court noted, should be charged the expense for injuries directly caused by his enterprise. Whether an employee suffers a sudden injury, or is simply injured over a gradual period of time, should be immaterial in determining the cost to the employer of conducting his business.

There is concern that the view espoused in this dissenting opinion could lead to innumerable fraudulent claims. However, it is this writer's opinion that the majority opinion, in adopting an artifical distinction with respect to the compensability of a back injury, will encourage fraud.

Under the majority view, workers will be encouraged to "remember" that at a particular time and place they received a back injury while lifting an unusually heavy item normally not required by their job duties. The worker who states that his back injury was the result of a gradual worsening condition in effect would be penalized. It is inconceivable that the General Assembly intended such an absurd result.

It is submitted that the only proper test in determining the compensability of an injury (and preventing fraudulent claims) is to strictly enforce the *Fassig* test, adopted

by the General Assembly in 1937, *i. e.*, whether the injury was received in the course of, and arising out of, the employment. Thus, if a worker would file a claim due to a back injury received while he was performing his normal and routine job duties, which duties did not subject him to greater risks or dangers than the public in general, his claim would be non-compensable, since causation between the job duties and the injury could not be established with certainty.

The majority takes the Court of Appeals to task for ignoring its obligation of applying the enacted law rather than attempting to amend it. Such comment is completely unjustified. In the *Hearing* case, this court would have awarded compensation to an injured employee suffering from a back condition but for the fact that his injury occurred prior to the 1959 statutory amendment. In effect, the majority in the *Hearing* case, as did the Court of Appeals in this cause, viewed the *Malone* test of "accidental in-character and result" in very broad terms. Under this approach, the injury in this cause would be compensable. Moreover, the Bureau of Workers' Compensation and the Industrial Commission initially determined that the employee's injury was compensable in this cause. Clearly, the Court of Appeals had compelling authority in support of its judgment.

In conclusion, this writer would hold that irrespective of whether the physical harm or damage suffered by an employee may have been the result or culmination of a gradual worsening condition caused by the daily performance of his normal or routine job duties, his injury should be compensable where he demonstrates that he is unable to continue his employment as a result of a disabling back injury received in the course of and arising out of his employment.

CELEBREZZE and LOCHER, JJ., concur in the foregoing dissenting opinion.