KENNEDY, Appellee,

v.

CITY OF TOLEDO; Mayfield, Admr., Appellant.

[Cite as *Kennedy v. Toledo* (1991), 75 Ohio App.3d 12.]

Court of Appeals of Ohio,
Lucas County.

No. L–89–326.

Decided July 19, 1991.

*George N. Fell II* and *Steven E. Marcus,* for appellee.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Diane J. Karpinski* and *Fred J. Pompeani,* for appellant.

ABOOD, Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury verdict in favor of appellee, Richard Kennedy, denied appellant's [1] motions for judgment notwithstanding the verdict and for new trial. Appellant sets forth two assignments of error:

"I. The trial court erred in overruling the defense motion for judgment notwithstanding the verdict.

---

1. The original complaint was filed against the city of Toledo and James L. Mayfield, Administrator, Bureau of Workers' Compensation. The post-trial motions were filed, as was this appeal, on behalf of James L. Mayfield, Administrator, Bureau of Workers' Compensation and the Industrial Commission of Ohio. Throughout this opinion the term "appellant" will be used in the singular, since such designation has no effect on the issues raised by this appeal.

"II. The trial court erred in overruling the defense motion for new trial."

The facts relevant to a determination of the issues raised by this appeal are as follows. In April 1968, appellee began his employment with the Police Department of the city of Toledo ("city") as a patrolman. In May 1983, appellee, while acting in the course of that employment, sustained a knee injury which required surgery. By July 1983, appellee was not yet able to return to his regular duties as a patrolman and, instead, was given a limited duty assignment. On November 15, 1983, while on vacation from his job, appellee drove to the Police Academy to purchase some materials for the Sergeant's examination for which he was studying and when he returned home had a heart attack. Appellee filed a claim with the Industrial Commission of Ohio ("commission") for workers' compensation benefits claiming that work-related stress caused his heart attack. The claim was disallowed at each administrative level. On August 25, 1988, pursuant to R.C. 4123.519, appellee filed a complaint in the Lucas County Court of Common Pleas, appealing the decision of the commission. On August 14, 1989, the case proceeded to trial by jury.

At the trial, appellee testified on direct examination that he had been working as a uniformed patrolman since 1968; that in May 1983 he injured his knee, missed one month of work and then returned to light duty work; that his light duty assignments included making badges at the Police Academy, clerical work and phone intake at the Human Relations Bureau and development of a fingerprint program; that he received no training for these assignments; that he had received an order issued from the chief's office on August 16, 1983, to be effective September 1, 1983, which indicated that persons on light duty would have to either return to full duty within ninety days from when they went on light duty or go on pension or workers' compensation; that he became "uptight" because "I couldn't continue the job I was doing, but I couldn't go back to the street at that particular time, because I would be unable to defend myself"; that the unfamiliarity of office work made him "tense" and "frustrated"; that it took him one hour to one and one-half hours to type a report that should take ten minutes; "[t]hat I was scared that I was going to lose my job * * * " and that he discussed this fear with Captain Armstrong, who said he could possibly keep him until the first of the year but that he did not know what would happen after that; that believing he had to do something to keep his job, he went to his doctor on October 11, 1983, and requested a return to full-duty work slip even though his knee was still problematic; that his doctor gave him such a slip to return to full duty work on October 12, 1983; that during the fingerprint program, he had numerous episodes of nervousness and profuse perspiring; that his hours of work were primarily 8:00 a.m. to 4:00 p.m., Monday through Friday,

with occasional evening and Saturday work; that on November 6, 1983, he took a vacation after being told he needed to start using his accumulated vacation time; that he was studying for the Sergeant's exam during this vacation, believing that passing it was necessary for him to remain on the police force; that he had taken the Sergeant's exam on three other occasions; that on November 15, 1983, while still on vacation, he drove to the Police Academy to pick up some materials needed for the exam, drove home and suffered a heart attack which ultimately resulted in bypass surgery; and that prior to November 15, 1983, he had had no such problems. Appellant also testified that his father had died of a heart attack; that he had smoked between one and two packs of cigarettes a day since he was a teenager; that on prior occasions, following injuries while on the force, he had been told at the hospital that he had high blood pressure; that his mother had diabetes; that he weighed one hundred ninety-five pounds in 1968 and two hundred ten to two hundred fifteen pounds on November 15, 1983, and that he drank heavily in 1978 and 1980. On cross-examination, appellee testified that Captain Armstrong did not watch over him to see that his work was getting done or tell him that he would have to leave the force in ninety days or recommend that he be released; that his light duty assignment was extended; that he was not required to take the Sergeant's exam; that during his four months of light duty work following his knee surgery, he did not take any of his over nine hundred accumulated hours of sick time; and that he never talked to the officer assigned to aid in stress-related problems or to his doctor concerning stress on the job.

Beverly Ann Kennedy testified that she has been married to appellee since January 24, 1983; that she assisted appellee with the fingerprint program; that while assisting her husband she observed her husband to be " * * * wringing wet clear down to the waist * * * " and that when she asked him what was wrong, he said he was very nervous; that when she would do his laundry during the time that he was on light duty assignment she noticed " * * * that his clothes were wet constantly"; and that after returning to light duty work in July 1983, appellee was "very stressed out. He paced the floor. He didn't sleep at night. I mean it was really bad, really bad. He was worried about losing his job. He didn't want to lose his job as a police officer. That was his whole life, you know." On cross-examination, she testified that appellee never told her that Captain Armstrong threatened him with dismissal or that he was being made to take the Sergeant's exam, " * * * but he felt as though he had to take the Sergeant's test in order to stay in the police line of work."

David K. Scheer, M.D., appellee's medical expert, testified, in response to a lengthy hypothetical question in which he was asked to assume a multitude of

facts including that "* * * the thought of being unable to return as a police officer in the position that he previously held was extremely stressful and upsetting to him" and that "* * * Mr. Kennedy has testified that he us [*sic*] extremely nervous and upset in handling his light duty position and duties because of his unfamiliarity with the job duties and that he had received no training * * *," that in his opinion, based upon a reasonable degree of medical probability, "* * * there is a definite relationship between the changes of duty and the duties that he had and his habits with the heart attack." Scheer stated further that the basis for this opinion is that "I feel these are all very stressful conditions for him, plus he had these other coronary risk factors," and that "I feel that these events precipitated his attack. He probably would have it eventually, but I think that was what brought it on immediately." On cross-examination, Scheer testified that appellee had a paranoid personality, meaning that he thinks "[s]omebody's always picking on me"; that appellant smoked, had hypertension, diabetes, obesity and a family history of heart attack and high blood pressure and that these are all risk factors of heart attack; and that appellee had pre-existing coronary arteriosclerosis. Scheer stated that he was unaware that appellee had been on vacation at the time of his heart attack and testified further as follows:

"Q. Now, Dr. Scheer, I want to ask you and I want to make sure I understand your testimony. You cannot say, can you Dr. Scheer, that the change in duties and this alleged stress that Mr. Kennedy experienced in this light duty position was the proximate cause of his myocardial infarction?

"A. He had numerous things. I can't tell you which one, I know that was one of the last ones.

"* * *

"Q. And I just want to make sure I understood your testimony and make sure it hasn't varied from the last deposition that you gave, and you were asked a question. So, Doctor, your honest testimony is, you can't really say for sure the stress in and of itself was cause of coronary artery disease or his heart attack, and you said no, and that's still your opinion?

"A. I can't say which one, which thing."

On redirect examination, Scheer testified that nothing pointed out during cross-examination changed his opinion.

Theodore D. Fraker, Jr., M.D., testified, as an expert medical witness for appellant, that appellee had pre-existing heart disease and that appellee's heart attack was not caused by any stressful situation as allegedly experienced in the change of his normal job duties.

Appellant contends in his assignment of error that the trial court erred in overruling its motions for judgment notwithstanding the verdict and for new trial. In support, appellant argues (1) that for stress related injuries, *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379, provides a two-part test: first, that the injury must have resulted from greater emotional strain or tension than that to which all workers are occasionally subjected and, second, that the stress was the medical cause of the injury; (2) that the first part of the test is an objective test; (3) that the second part of the test requires appellee to prove that the workplace stress was the *sole* cause of his injury; (4) that appellee has failed to satisfy either test under *Ryan, supra,* as a matter of law; (5) that the lack of time proximity between work and the injury precludes recovery, since it cannot be said that the anxiety relates to a specific work-related event; and (6) that Dr. Scheer's opinion was based on an assumed fact not in evidence.

Appellee responds that there was sufficient evidence presented to sustain the trial court's denial of both post-trial motions, that an objective test is not required, that a claimant need only prove that the stress was *a* proximate cause of his injury, and that an injury occurring over a course of time may be compensable.

Appellant replies that the stressors must be "unusual"; that the syllabus of *Ryan, supra,* clearly requires that the injury result "solely by mental or emotional stress"; and that appellee's stress was merely an exaggerated response to a not unusual stressful event.

As to a motion for judgment notwithstanding the verdict:

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338.

As to a motion for a new trial:

"Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court.

"Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law.

"There is a basic difference between the duty of a trial court to submit a case to the jury where 'reasonable minds' could differ and the right of a trial court to grant a new trial on the basis of its conclusion that the verdict is not 'sustained by sufficient evidence.' The former does not involve any *weighing* of evidence by the court; nor is the court concerned therein with the question of credibility of witnesses. However, in ruling on a motion for new trial upon the basis of a claim that the judgment 'is not sustained by sufficient evidence,' the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraphs one, two and three of the syllabus.

" 'The meaning of the term "abuse of discretion" in relation to the granting of a motion for a new trial connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court.' " *Id.* at 87, 52 O.O.2d at 378–379, 262 N.E.2d at 689, quoting *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, paragraph two of the syllabus.

The issues presented by appellant's assignments of error are (1) whether the trial court abused its discretion in overruling appellant's motion for new trial; and (2) as to appellant's motion for judgment notwithstanding the verdict, whether, when construing the evidence most strongly in appellee's favor, reasonable minds could only conclude that appellee's heart attack was not caused by emotional stress received in the course of, and arising out of, appellee's employment.

This court's consideration of appellant's assignments of error rests, in large part, upon the state of the law as to injuries which result from nonphysical, gradually developing, work-related causes. Historically, by a series of cases, two rules developed in Ohio as to the construction of R.C. 4123.01(C) as it defines "injury." One rule, known as the "sudden mishap" rule, provided that an employee cannot recover workers' compensation benefits unless he proves that his injury occurred as the result of a sudden mishap occurring at a particular time and place. *Shea v. Youngstown Sheet & Tube Co.* (1942), 139 Ohio St. 407, 408, 22 O.O. 469, 40 N.E.2d 669, 670; *Malone v. Indus. Comm.*

(1942), 140 Ohio St. 292, 23 O.O. 496, 43 N.E.2d 266; *Bowman v. National Graphics Corp.* (1978), 55 Ohio St.2d 222, 9 O.O.3d 159, 378 N.E.2d 1056. The other rule, known as the "physical injury or trauma" rule, provided that "[d]isabilities occasioned solely by emotional stress without contemporaneous physical injury or physical trauma are not compensable injuries within the meaning of R.C. 4123.01(C)." *Szymanski v. Halle's* (1980), 63 Ohio St.2d 195, 17 O.O.3d 120, 407 N.E.2d 502, syllabus; *Toth v. Standard Oil Co.* (1953), 160 Ohio St. 1, 50 O.O. 476, 113 N.E.2d 81; *Shea, supra; Indus. Comm. v. O'Malley* (1931), 124 Ohio St. 401, 178 N.E. 842.

Recently, however, the Supreme Court of Ohio reversed both rules. In *Village v. General Motors Corp.* (1984), 15 Ohio St.3d 129, 15 OBR 279, 472 N.E.2d 1079, syllabus, the court held that:

"An injury which develops gradually over time as the result of the performance of the injured worker's job-related duties is compensable under R.C. 4123.01(C). (*Bowman v. National Graphics Corp.*, 55 Ohio St.2d 222 [9 O.O.3d 159, 378 N.E.2d 1056], overruled."

In *Ryan, supra*, paragraph one of the syllabus, the court held:

"1. A physical injury occasioned solely by mental or emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C). (*Szymanski v. Halle's* [1980], 63 Ohio St.2d 195 [17 O.O.3d 120, 407 N.E.2d 502], and *Toth v. Standard Oil Co.* [1953], 160 Ohio St. 1 [50 O.O. 476, 113 N.E.2d 81], overruled.)"

█ All of appellant's arguments deal with the factual and legal requirements of a claim for workers' compensation benefits for a physical injury resulting from workplace stress developing over time. The first question for this court is whether the phrase "occasioned solely by mental or emotional stress" in paragraph one of the syllabus of *Ryan, supra*, imposes a requirement that a claimant who alleges a physical injury resulting from workplace stress prove that the workplace stress is the *sole* cause of his injury. A historical perspective renders it clear that this phrase was inserted for the purpose of overruling prior case law which held that injuries resulting from stress alone are not compensable. In this context, the word "solely" is permissive and is used only for the purpose of establishing the allowance of recovery for physical injuries which result from nonphysical injury or trauma. Were this court to interpret the phrase restrictively, *i.e.*, as a causative requirement, we would be rewriting the syllabus of *Ryan, supra*.

█ This court finds, therefore, that (a) *Ryan, supra*, does not impose a requirement that a claimant who alleges a stress-related injury prove that his injury resulted solely from the workplace stress, and (b) the basic principles of

proximate causation including dual causation are applicable to stress-related injuries. "Thus, when two factors combine to produce damage or illness, each is a proximate cause." *Norris v. Babcock & Wilcox Co.* (1988), 48 Ohio App.3d 66, 548 N.E.2d 304, syllabus.

The next question to be resolved is the legal and factual causative standard to be applied in the consideration of claims for physical injury resulting from gradually developing workplace stress. In *Ryan, supra,* 28 Ohio St.3d at 409, 28 OBR at 465, 503 N.E.2d at 1382, the court recognized that " * * * it is necessary to define what kind of mental or emotional stress is legally sufficient to give rise to a compensable injury." It was noted that "[t]he necessity for drawing a distinction between legal causation and medical causation in claims involving stress-related injuries previously was discussed in *Village, supra,* at 135 [15 OBR at 284, 472 N.E.2d at 1084] (Holmes, J., concurring in judgment)." *Ryan, supra,* at 28 OBR at 465, 503 N.E.2d at 1382, fn. 2. In *Village, supra,* 15 Ohio St.3d at 135, 15 OBR at 284, 472 N.E.2d at 1084, Justice Holmes explained that:

" * * * One perplexing area for future litigation will certainly be that of heart-related cases. There, the essence of the problem is causation, which must be broken down into legal causation as well as medical causation. *Coday v. Willamette Tug & Barge Co.* (1968), 250 Ore. 39, 47, 440 P.2d 224. This distinction is set forth by Professor Larson as follows:

" 'Under the legal test, the law must define what kind of exertion satisfies the test of "arising out of the employment."

" 'Under the medical test, the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this collapse.' *Larson, supra,* at 7–235, Section 38.83."

The legal test announced in *Ryan, supra,* paragraph two of the syllabus, is that:

"In order for an injury occasioned solely by mental or emotional stress to be compensable, the claimant must show that the injury resulted from greater emotional strain or tension than that to which all workers are occasionally subjected."

" '[T]he factual issue of causal relationship is generally for the medical experts and the triers of fact' and 'analysis must proceed on a case-by-case basis.' " *Id.,* 28 Ohio St.3d at 410, 28 OBR at 465, 503 N.E.2d at 1382, quoting *Village, supra,* 15 Ohio St.3d at 136, 15 OBR at 284, 472 N.E.2d at 1084

(Holmes, J., concurring).[2] Such factual issues include the effect that a cumulative impact has on an employee's body "or a particular physical weakness." *Id.* at 135, 15 OBR at 283, 472 N.E.2d at 1084 (Holmes, J., concurring); see, also, *Hamilton v. Keller* (1967), 11 Ohio App.2d 121, 40 O.O.2d 289, 229 N.E.2d 63.

■ Applying the law as stated to the facts set forth above, this court finds as to appellant's first assignment of error that, when construing the evidence most strongly in favor of appellee, reasonable minds could conclude that the stress experienced by appellee was not the same stress "to which all workers are occasionally subjected" and that appellee's heart attack was proximately caused by the job-related stress to which appellee was subjected between June and November 1983.

As to appellant's second assignment of error, upon consideration of the evidence that was presented at trial and as summarized above and the law, this court finds that the trial court did not act unreasonably, arbitrarily or unconscionably in denying appellant's motion for a new trial.

■ As to appellant's contention that Dr. Scheer was asked to assume that appellee was extremely nervous and upset and that such fact was not established by the evidence, the general rule is that:

"Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury." *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, syllabus.

In order to establish such causal connection, each side is "entitled to include in their hypothetical questions such facts as they claimed were shown by the evidence * * *. Each party has the right to show the scientific conclusions to be drawn from the facts as he claims them to be, subject to the contingency that the jury shall find the facts to be as stated." *Haas v. Kundtz* (1916), 94 Ohio St. 238, 244, 113 N.E. 826, 828. Although appellee did not use the

---

2. In *Village, supra,* 15 Ohio St.3d at 133, 15 OBR at 282, 472 N.E.2d at 1082, the Supreme Court stated that "[w]hether the injury was sudden or progressive is irrelevant as long as its cause is related to the injured worker's employment." Although the application of this rule as it relates to heart-related cases was questioned by Justice Holmes, who would require that " * * * the unusual strenuous exertion must be fixed in a definite time period," *id.* at 136, 15 OBR at 284, 472 N.E.2d at 1084, resolution of this issue is not necessary for a determination based on the facts of this appeal. Here, the stress to which appellee was subjected occurred over a definite four-month period.

specific phrase "extremely nervous and upset," the testimony by appellee and his wife was sufficient for reasonable minds to conclude that appellee was, in fact, "extremely nervous and upset" and, therefore, Scheer's opinion is not, as a matter of law, based upon facts not proved, but is "subject to the contingency that the jury shall find the facts to be as stated." *Id.* at 244, 113 N.E. at 828.

Accordingly, appellant's assignments of error are found not well taken.

On consideration whereof, this court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs assessed to appellant.

*Judgment affirmed.*

GLASSER and MELVIN L. RESNICK, JJ., concur.