CZARNECKI, APPELLEE, *v.* JONES & LAUGHLIN STEEL
CORPORATION, APPELLANT, ET AL.
FARLEY, APPELLEE, *v.* WARNER & SWASEY COMPANY,
APPELLANT, ET AL.

(Nos. 78-54 and 78-354—Decided June 20, 1979.)

414

Mr. J. William Petro, for appellee Joseph Czarnecki.

Messrs. Dachman & Dachman and Mr. Jerome M. Dachman, for appellee James L. Farley.

Crede Calhoun Co., L. P. A., Mr. Crede Calhoun and Mr. J. Michael Monteleone, for appellant Jones & Laughlin Steel Corp. (case No. 78-54) and appellant Warner & Swasey Co. (case No. 78-354).

WILLIAM. B. BROWN, J. The sole issue raised by the instant causes is whether, under R. C. 4123.01(C), a plaintiff must prove that unusual circumstances preceded his injury before that injury may be found compensable.

R. C. 4123.01(C) provides:

" 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of and arising out of, the injured employee's employment."

The portion of the statute that raises the question of whether a plaintiff must prove that unusual circumstances preceded his injury in order to receive compensation is the phrase "whether caused by external accidental means or accidental in character and result * * *." It is established law in Ohio that the prime aim of statutory construction is to determine legislative intent. (*Henry* v. *Central Natl. Bank* [1968], 16 Ohio St. 2d 16, paragraph two of the syllabus; 2A Sutherland Statutory Construction 15 [4 Ed.], Section 45.05 and cases cited therein.) That intent may be revealed by the clear language of the statute (*Provident Bank* v. *Wood* [1973], 36 Ohio St. 2d 101, 106) and, where that language is not clear, by its legislative and judicial context (see *Henry* v. *Central Natl. Bank, supra*). The meaning of the phrase "caused by external accidental means or accidental in character and result" is not clear.[1] To determine the meaning of those alternative phrases, therefore, it is necessary to rely on the history behind the statute's enactment, the context in which the disputed phrases first appeared and the statutory mandate that workers' compensation statutes be "liberally construed in favor of employees and the dependents of deceased employees" (R. C. 4123.95).

The phrases "caused by external accidental means" and "accidental in character and result" are the products of court definitions of compensable injury. The concept that a compensable injury must be caused by "external accidental means"—*i. e.,* that it must be caused by unusual cir-

[1] One possible meaning of an injury "accidental * * * in result" is an injury which causes an accident.

cumstances—first appeared in *Indus. Comm.* v. *Brown* (1915), 92 Ohio St. 309, 316-317, and was firmly established by the time that this court denied compensation for a heart attack not preceded by "any extraordinary or unusual happening" in *Indus. Comm.* v *Franken* (1933), 126 Ohio St. 299, 300-301. (See *Bowman* v. *National Graphics Corp.* [1978], 55 Ohio St. 2d 222, dissenting opinion of Justice Sweeney at pages 228-229.) The application of the doctrine of an "unusual happening" that the General Assembly probably had in mind when R. C. 4123.01(C) was drafted is found in *Dripps* v. *Indus. Comm.* (1956), 165 Ohio St. 407. (*Bowman* v. *National Graphics Corp.*, *supra*, dissenting opinion at page 232; *Hearing* v. *Wylie* [1962], 173 Ohio St. 221, 223.) In *Dripps*, this court held that injuries arising from exertion above that normally required in the course of work, but not produced or accompanied by an extraordinary or unusual happening, were not compensable. In the words of the *Dripps* opinion at pages 408-409:

"For an employee to receive compensation for an injury arising at a time when he was performing his duties as an employee, he must show that such injury is physical or traumatic in character, that it arose suddenly and was not intentionally self-inflicted, and that it *resulted by external* means from some specific event or mishap occurring suddenly and unexpectedly and not in the usual course of events." (Emphasis added.)

The phrase "accidental in character and result" made its way into Ohio workers' compensation law in the first two paragraphs of the syllabus in *Malone* v. *Indus. Comm.* (1942), 140 Ohio St. 292. Those paragraphs define compensable injury as an injury which "comprehends a physical or traumatic damage or harm, accidental in the sense of being the result of a sudden mishap" and as an injury produced by or resulting from "something unforeseen, unexpected, and unusual."[3]

---

[3]The *Malone* syllabus provides, in its entirety:

"1. The term 'injury' as used in the Constitution and in Section 1465-68, General Code (117 Ohio Laws, 109), as amended effective July 10, 1937, comprehends a physical or traumatic damage or harm, ac-

An examination of only the first two paragraphs of the *Malone* syllabus might lead to the conclusion that the phrase "accidental in character and result," like the *Dripps* language concerning "external accidental means," requires an injury to be preceded by an unusual circumstance before it may be compensated. When the *Malone* opinion is viewed in its entirety, however, it is clear that neither the *Malone* court nor the General Assembly intended to give both phrases the same meaning. Even the syllabus itself confirms this conclusion. Paragraph four thereof reads as follows:

"Heat exhaustion suddenly and unexpectedly suffered * * * constitutes an accidental traumatic injury under the Workmen's Compensation Act of this state."

Since this portion of the *Malone* syllabus allows compensation for an injury not preceded by an unusual circumstance, it cannot be reconciled with the "external accidental means" doctrine of *Dripps*. (See, also, Judge Bell's concurrence in *Davis* v. *Goodyear Tire & Rubber Co.* [1959],

cidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place.

"2. When, in connection with an intentional act on the part of a workman which precedes an injury to him, something unforeseen, unexpected, and unusual occurs which produces the injury or from which the injury results, it is accidental in character and result.

"3. When an employee, by reason of the activities, conditions and requirements of his employment, is subjected to a greater hazard than are the members of the general public, and he is accidentally injured thereby, a causal connection between the employment and his injury is established.

"4. Heat exhaustion, suddenly and unexpectedly suffered by an employee as a result of the circumstances and requirements of his employment subjecting him to a greater hazard than that to which members of the general public are subjected, in this case by reason of working in a superheated foundry resulting in his death within twelve hours after the attack, constitutes an accidental traumatic injury under the Workmen's Compensation Act of this state."

(The holding in *Bowman* v. *National Graphics Corp.* (1978), 55 Ohio St. 2d 222, is not inconsistent with the holding or the fourth paragraph of the *Malone* syllabus, because it did not involve an injury "suddenly * * * suffered.")

168 Ohio St. 482, 484.) Moreover, while it is established law in Ohio that a Supreme Court syllabus states the law of the case (*Cassidy* v. *Glossip* [1967], 12 Ohio St. 2d 17, paragraph six of the syllabus), it is also established law that any Supreme Court syllabus must be interpreted with reference to the facts of and questions presented by the case (14 Ohio Jurisprudence 2d 683, Courts, Section 248, and cases cited therein). In the *Malone* case, no unusual circumstance preceded the injury. This court, nonetheless, granted compensation. That holding provides further support for the proposition that those portions of R. C. 4123.-01 (C) originating in the *Malone* opinion must not be construed to require an unusual circumstance as a prerequisite to compensation.[2] (The same conclusion was drawn by this court in *Hearing* v. *Wylie, supra,* at page 224, when it found that, had the decedent's injury occurred after the passage of current R. C. 4123.01(C), claimant should have been compensated for death benefits for the ruptured appendix suffered while decedent was lifting, without a preceding unusual event, a 100-pound side of beef.)

The chronology of *Malone, Dripps* and R. C. 4123.01 (C) also shows that the General Assembly did not intend for the *Malone* language in R. C. 4123.01(C) to require a preceding unusual circumstance as a prerequisite for compensation. The *Franken* opinion, which established the "external accidental means" or unusual circumstances doctrine, was written in 1933. In 1937, the General Assembly enacted G. C. 1465-68, which defined compensable injury as "*any* injury received in the course of, and arising out of, the injured employee's employment." (Emphasis added.) The *Malone* opinion was written in 1942, and the *Dripps* opinion reinstated the "external accidental means" requirement in 1956. In 1959, Judge Bell's concurring opinion in *Davis, supra* (168 Ohio St. 482, 484), characterized the *Malone* and *Dripps* doctrines as conflicting, applied the *Dripps* doctrine and, in Judge Bell's words, appealed

[2] See, also, the statement in *Malone* that "scores of compensable accidental injuries result where no accidental circumstance precedes or causes them." *Malone, supra,* at page 298.

to the General Assembly to correct any error the court may have made in applying the *Dripps* test for compensability.[4]

Later in 1959, the General Assembly amended the statutory definition of compensable injury. (The timing and language of the amendment indicate that the General Assembly was responding to the problems raised in the *Davis* case.) In the process of redrafting the statute, the General Assembly adopted the definition of compensable injury now found in R. C. 4123.01(C), a definition that incorporates both the *Malone* and *Dripps* tests for compensability. (The language of R. C. 4123.01(C)—specifically the word "or" which joins the phrases "caused by external accidental means" and "accidental in character and result"—makes it clear that the General Assembly intended the two phrases to be read in the alternative and intended the injury to be compensable if it fell under either phrase.[5]) By declining to adopt the *Dripps* test alone, the General Assembly chose not to make an unusual circumstance a prerequisite to compensability. As Judge Bell said in the *Hearing* opinion, *supra* (173 Ohio St. 221), at page 223:

---

[4]Judge Bell's concurrence reads in pertinent part:

"It was my opinion at the time the case of *Dripps* v. *Industrial Commission,* 165 Ohio St., 407, 135 N. E. (2d), 873, was decided that the judgment then agreed upon by a majority of this court could not be reconciled with the decision in, and paragraphs three and four of the syllabus of, *Malone* v. *Industrial Commission,* 140 Ohio St., 292, 43 N. E. (2d), 266, or with *Maynard* v. *B. F. Goodrich Co.,* 144 Ohio St., 22, 56 N. E. (2d), 195. * * *"

"At the time of the decision in the *Dripps case,* the majority of this court chose one of what may be termed two irreconcilable lines of decision. * * * If this court was wrong in its interpretation of the statute as announced in the *Dripps case* and those which have followed it, and if the Workmen's Compensation Act is to be made a general policy of insurance for the employees of Ohio, as has been argued to this court on occasion, our error should be corrected by the General Assembly and a different approach to workmen's compensation outlined in clear and unequivocal legislative expression."

[5]Webster's Third New International Dictionary defines the word "or" as "used as a function word to indicate (1) an alternative between different or unlike things, states, or actions * * *; (2) choice between alternative things, states, or courses * * *."

"Although some doubt may be entertained that the expression is 'clear and unequivocal,' the General Assembly, within a matter of a few months after the *Davis* decision, amended Section 4123.01, Revised Code, and defined 'injury' as including 'any injury, whether caused by external accidental means or accidental in character and result.' The conclusion is inescapable to a majority of this court that the General Assembly intended to define 'injury' in the terms of the *Malone* rule and in the terms of Judge Zimmerman's dissent in *Dripps*. The legislative branch of the government exercised a prerogative delegated to it, and the judiciary is obliged to respect that prerogative."

Given the history behind the enactment of R. C. 4123.-01(C), the context of the disputed phrases and the mandate that workers' compensation statutes be liberally construed in favor of the injured employee, we find that the General Assembly exercised its prerogative to include within the R. C. 4123.01(C) definition of compensable injuries those injuries which are not preceded by an unusual event. The judgments of the Courts of Appeals are accordingly affirmed.

*Judgments affirmed.*

CELEBREZZE, C. J., SWEENEY and LOCHER, JJ., concur.
HERBERT, P. BROWN and HOLMES, JJ., dissent.

PAUL W. BROWN, J., dissenting. The conclusion, with which I agree, that the legislative reversal of *Dripps* v. *Indus. Comm.* (1956), 165 Ohio St. 407, removed the necessity of proof of external accidental means in a case in which it is claimed only that an injury is accidental in character and results, does not eliminate the necessity of particularizing the causal connection between employment at the time in question and the claimed compensable injury. The significant inquiry for this court and those below should concern the adequacy of the evidence of the existence of a

compensable injury absent a finding that there was a sudden lurch of the drum as alleged.

Where a claimant's evidence consists solely of his own statement that sudden pain occurred while he was in the performance of a usual task, it does not follow that "a sudden mishap has occurred by chance unexpectedly and not in the usual course of events, at a particular time and place." (*Malone* v. *Indus. Comm.* [1942], 140 Ohio St. 292.) Knowing this, and apparently having no other fact or circumstance tending to show that an injury had been then and there caused by an event or condition of their employment the claimants chose to hang their hats on a specific preceding external accident event. The charge in *Czarnecki* v. *Jones & Laughlin Steel Corp.* therefore was under these facts correct and the jury's finding that no lurch occurred barred the claimant's recovery and invalidated the stated ground for new trial. This conclusion renders the syllabus herein suspect. A claimant must choose between attempting to prove external accidental injury—by far the most usual industrial injury—and the much rarer injury, accidental in character and result. To permit ambivalence leads to a "heads I win, tails you lose" situation. Determination of what facts or circumstances need to be proven to validate an injury conceived to be accidental in character and result turns on the nature of the injury and events and conditions material to its occurrence and demonstrating its causation and origin, whether these events precede or coincide with that injury.[*]

I would reverse the grant of Czarnecki's motion for a new trial and reverse the directed verdict for the plaintiff in *Farley* v. *Warner & Swasey Co.*

HERBERT and HOLMES, JJ., concur in the foregoing dissenting opinion.

---

[*]It is of importance to note that the stipulation here excludes the type of situation with which we were concerned in *Bowman* v. *National Graphics Corp.* (1978), 55 Ohio St. 2d 222.