HAMILTON, APPELLEE, *v.* KELLER, ADMR., BUREAU OF WORKMEN'S COMPENSATION, APPELLANT, ET AL., APPELLEES.

(No. 1339—Decided August 9, 1967.)

*Mr. William B. Saxbe*, attorney general, *Mr. E. Bruce Hadden* and *Mr. James A. McLaughlin*, for appellant.

*Mr. Anthony J. Bowers* and *Mr. R. Brooke Alloway*, for appellee.

GUERNSEY, P. J.   This is an appeal by the Administrator of the Bureau of Workmen's Compensation from a judgment of the Common Pleas Court of Allen County determining that the plaintiff, appellee herein, is entitled as the widow of one Charles Hamilton to participate in the State Insurance Fund, which judgment was entered by that court on her appeal tried to the court (a jury having been waived) from a decision of the administrator denying reconsideration of his disallowance of her claim.

It is undisputed that plaintiff's decedent was at the time of his death 49 years of age and employed by defendant Hanco Oil Company, an appellee herein, as a manager of one of its filling stations; that his duties, in addition to the usual duties of servicing customers' cars and cleaning and maintenance about the station, included the duty of removing snow from the station premises at such times as it fell and accumulated; that on December 27, 1961, he reported for work at approximately 5:30 to 6:30 a. m. and was observed thereafter shoveling snow intermittently throughout the morning while not engaged in the servicing of customers' automobiles; that according to the records of the State Climatologist the temperature rose from fifteen to thirty-five degrees Fahrenheit on December 27, and some witnesses estimated the temperature to be approximately 17 or 18 degrees during the period of time Mr. Hamilton was shoveling snow; that according to the same records snow flurries on December 27 built up a prior accumulation of snow of 1.5 inches to an accumulation of 2.5 inches (although some witnesses testified to an accumulation of six or more inches of snow in the vicinity of the station); that, although Mr. Hamilton had never complained to anyone else, including his wife, of any symptoms indicative of heart or circulatory disease or impairment and appeared to be in general good health, he had complained to a fellow employee once or twice within a period of six to eight months before his death "that his chest bothered him"; that according to the same employee, at about noon "He [Hamilton] said his chest was bothering him, and he went in and he stepped into the back room," "He was leaning up against the cash register, and he was holding his chest," "He was broke out in a sweat, and then I went out to the drive to take care of another car," "and when I came back in, he had fallen or he fell after I arrived back in the station, I don't remember which";

that thereupon an ambulance was summoned which took Hamilton to a hospital where he was pronounced by hospital attendents as being dead on arrival; and that Dr. Noble, the county coroner, who thereafter arrived at the hospital, determined, without dissection, that death was due to "acute myocardial infarction."

As a witness for the plaintiff, Dr. Noble testified, among other things, that acute myocardial infarction "results from the slowing down of the normal blood supply carrying oxygen to a heart muscle and this sudden diminishing blood supply and oxygen carrying power causes damage to the heart muscle itself"; that antecedent causes are usually present in connection with myocardial infarction which "can be several different things," including overweight, hardening of the arteries "that changes the walls of the blood vessels in the coronary circulation of the heart," high blood pressure, overactive thyroid, valvular heart disease, and changes in the aorta; that myocardial infarction is the damage or the condition damaging the heart muscle itself; that in his opinion Hamilton's "activity in the cold air and the shoveling helped *precipitate* his myocardial infarction and the cause of death"; that physiologically, in lay terms, "first we assumed that this man had to have some type of change in the coronary arteries due to hardening of the arteries or something that made this an abnormal vessel," "then you put him in the situation where he is exerting himself, and shoveling snow is not considered light exertion, with the added component of cold air, and it throws too much strain on the heart muscle since this vessel is not carrying enough blood with oxygen to it, to the muscle itself, and at that time it can happen in several different ways, but if the muscle is damaged because of direct lack of oxygen and blood there would be a sudden embarrassment of normal supply to the heart muscle and it results in a myocardial infarction"; that "I am assuming he had damaged coronary circulation of some kind"; that "in my opinion it would be almost impossible" for a man who "has an absolutely healthy, unimpaired and undeteriorated heart and circulatory system to die of an acute myocardial infarction at such a time"; that "I don't know which of the conditions existed"; and that I am assuming that "he had to have an advanced case of arteriosclerosis of the artery." (Emphasis added.)

As an expert witness for the plaintiff, Dr. Rusoff testified, among other things, that acute myocardial infarction "is sudden death of a portion of the heart muscle as a result of that portion of the heart muscle being deprived of its blood supply, interruption of flow of blood through one of the coronary arteries which are the arteries that supply blood to the heart muscle"; that "from the facts given me in this hypothetical question it is quite obvious that this man died of a heart attack," "Furthermore, in this hypothetical question there are indications that he has some symptoms relative to coronary vessel insufficiency or inadequate blood supply to his heart prior to this time, but on the date in question, December 27, 1961, this man was exposed to cold and vigorous exercise, the cold due to the elements and the vigorous exercise concerned with shoveling snow," "Both these elements have a deleterious effect upon the arteries supplying blood to the heart muscle," "The cold itself will cause blood vessel spasm and the exertion entailed in shoveling snow will further augment or aggravate that spasm to such extent to occlude or narrow one of these arteries sufficiently as to interrupt the flow of blood to the heart muscle thereby relating this acute myocardial infarction and *sudden* death which occurred in this case, thereby relating his death to the causes in question." (Emphasis added.)

The first five of the assignments of error of the appellant administrator were argued together in his brief and concern whether the medical testimony presented at the trial is sufficient to sustain the judgment, the administrator claiming that Dr. Noble's testimony supplied and assumed facts as to which there was no proof (see *Gerich* v. *Republic Steel Corp.,* 153 Ohio St. 463) and that Dr. Rusoff's testimony was based on a hypothetical question incorporating generalities and inaccuracies rather than specific facts, for instance, reference to a "cold" day in December, to a "substantial" amount of snow on the ground, and to the decedent's shoveling snow for approximately "thirty minutes" when he became ill.

On cursory examination there appears to be considerable "bootstrapping" or circular reasoning in Dr. Noble's testimony, *i. e.,* it *seems* that he concludes that the cause of death was an acute myocardial infarction because that would probably follow from a pre-existing coronary circulatory insufficiency

coupled with conditions of exposure to cold and stress, and it *seems* than since he concludes the cause of death was acute myocardial infarction he infers from such conclusion that it was preceded by a condition producing coronary circulatory insufficiency. However, on closer analysis we find that Dr. Noble's conclusion as to the cause of death was elicited in answer, not to a hypothetical question, but in answer to a question as to what his "diagnosis" of the cause of death was at the time he examined Hamilton's body at the hospital. Although he did not dissect the body we do not know, and it was not brought out, what other information he may have had at that time to assist him in arriving at his "diagnosis." There being no showing of invalidity in this "diagnosis," or incompetency of such evidence, we may then make all the usual inferences arising from that determination, including the inference that it was pre-existed by a condition producing coronary circulatory insufficiency. Of course there was also the evidence of probative value that Hamilton had told a fellow employee on one of two occassions during the preceding six to eight months "that his chest bothered him." This statement is equivocal and could support a number of different inferences but particularly, in the light of the determination that acute myocardial infarction was the immediate cause of death, could support an inference that at the time of such complaints Hamilton was suffering from some condition producing coronary circulatory insufficiency.

Although the hypothesis in the question asked Dr. Rusoff was not phrased with technical nicety his testimony was merely cumulative to that of Dr. Noble and the defendant-appellant offered no expert medical testimony of any sort to rebut that adduced for the plaintiff.

Under these circumstances we are of the opinion that the Common Pleas Court committed no error prejudicial to the appellant in any of the particulars set forth in the first five assignments of error and that such assignments are without merit.

Appellant's sixth and seventh assignments of error are to the effect that the Common Pleas Court erred in failing to direct a verdict in his favor at the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence. The former assignment is, of course, waved by the defendant by

proceeding to introduce defendant's evidence (testimony of Walter Money) and the latter assignment raises the primary issue presented by this appeal, specifically, is acute myocardial infarction (resulting in death), occurring by reason of an interruption of the flow of blood to the heart muscle and as a direct and proximate result of the activity of such employee in intermittently shoveling several inches of snow for a period of more than five hours in temperatures of approximately 17 or 18 degrees Fahrenheit, where such employee has a pre-existing physical condition or disease producing coronary circulatory insufficiency, and where the shoveling of snow is a duty of that employee which is carried out only on those occasions when snow falls and accumulates, compensable as an accidental injury under the Workmen's Compensation Act?

The administrator claims, in essence, that the decedent was suffering from a pre-existing progressive disease process which finally progressed to the point where under the stress of "the more strenuous of his ordinary work activities [;] his diseased coronary vascular system gave out and he died," and his injury, if any he had, did not, therefore, constitute a compensable injury.

To a degree this claim ignores the commitment of the Supreme Court of Ohio to the proposition that death is caused by an injury where the injury aggravates a pre-existing condition and death is thereby accelerated by a substantial period of time. *Sevinsky* v. *Truscon Steel Division of Republic Steel Corp.*, 168 Ohio St. 523; *McKee* v. *Electric Auto-Lite Co.*, 168 Ohio St. 77; *State, ex rel. Republic Rubber Division*, v. *Morse*, 157 Ohio St. 288; *Weaver* v. *Industrial Commission*, 125 Ohio St. 465; and *Ackerman* v. *Industrial Commission*, 131 Ohio St. 371. Compensation is awarded for an injury which is a hazard of the employment acting on a particular employee in his condition of health. Every workman brings with him to his employment certain infirmities. The employer takes an employee as he finds him and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If that injury is the proximate cause of the death or disability for which compensation is sought, the previous physical condition is unimportant and re-

covery may be had independently of the pre-existing weakness or disease. 99 Corpus Juris Secundum 589, Workmen's Compensation, Section 170.

As the claimant was denied recovery in *Hearing* v. *Wylie,* 173 Ohio St. 221, on a determination by the majority of the court that the 1959 amendment of Section 4123.01, defining "compensable injury," could not apply retroactively to the claim, the first paragraph of the syllabus of the *Hearing case* and that part of the opinoin thereof determining that the General Assembly intended to define injury in the terms of the rule set forth in *Malone* v. *Industrial Commission,* 140 Ohio St. 292, is really *obiter dicta.* However, that does not mean that we must revert to the holdings of the Supreme Court in *Dripps* v. *Industrial Commission,* 165 Ohio St. 407; *Artis* v. *Goodyear Tire & Rubber Co.,* 165 Ohio St. 412; and *Davis* v. *Goodyear Tire & Rubber Co.,* 168 Ohio St. 482. For we may, in a case where we allow a claim, ourselves determine that the General Assembly, by its 1959 amendment of Section 4123.01, in effect thereafter at the time the claim here under consideration arose, intended to define "injury" in the terms of the *Malone* rule and in the terms of Judge Zimmerman's dissent in *Dripps,* and thereby, by legislative prerogative, to overcome and set aside the *Dripps-Artis-Davis* rule. We do so determine and conclude that the term "injury" as used in Section 4123.01, Revised Code, as amended effective November 2, 1959, includes any physical or traumatic damage or harm accidental in character and result and any physical or traumatic damage or harm produced or caused by accidental means, received in the course of, and arising out of, the injured employee's employment. Likewise, as stated in the syllabus in *Malone* v. *Industrial Commission:*

"2. When, in connection with an intentional act on the part of a workman which precedes an injury to him, something unforeseen, unexpected, and unusual occurs which produces the injury or from which the injury results, it is accidental in character and result.

"3. When an employee, by reason of the activities, conditions and requirements of his employment, is subjected to a greater hazard than are the members of the general public, and

he is accidentally injured thereby, a causal connection between the employment and his injury is established.''

See, also, *Maynard v. B. F. Goodrich Co.*, 144 Ohio St. 22, requiring a claimant to show, *inter alia,* that the injury complained of was the proximate cause of decedent's death, and that the question of proximate cause is for the trier of fact.

We likewise conclude from *Gerich v. Republic Steel Corp.*, 153 Ohio St. 463, and *Nelson v. Industrial Commission,* 150 Ohio St. 1, where claims were denied, that, notwithstanding that the injury may come within the general rule expressed in *Malone,* an injury which occurs in the regular course of nature from the usual and normal activities of the employment is not compensable. With particular relation to death or disability resulting from heart injuries or heart conditions this limitation is set forth in positive application in 99 Corpus Juris Secundum 623, Workmen's Compensation, Section 184b, as follows:

''It is generally recognized that a heart attack or heart injury, such as coronary thrombosis, acute dilation of the heart, or some other injury to the heart, such as myocarditis, or coronary occlusion, which results in disability or death may be compensable as an accident or accidental injury where it was due to unusual or extraordinary conditions in the employment, or was due to overexertion or excessive strain in performing the duties of the employment; and the test to determine whether compensation may be awarded in such situations is whether the unusual exertion or excessive strain precipitated the death or disability so as to bring it about at a time when it would not have occurred normally.''

Summarizing, we conclude from these authorities that under the present state of Ohio law for an injury to be compensable under the Workmen's Compensation Act it must (1) be in the course of the injured employee's employment, (2) arise out of the injured employee's employment, (3) be physical or traumatic damage or harm accidental in character and result, in that in connection with an intentional act on the part of a workman something unforeseen, unexpected, and unusual occurs which produces the injury or from which the injury results, *or* be physical or traumatic damage or harm produced or caused by external accidental means, and (4) be other than an

injury which may occur in the regular course of nature from the usual and normal activities of the employment.

We further conclude that (1) when an employee, by reason of the activities, conditions and requirements of his employment, is subjected to a greater hazard than are the members of the general public, and he is accidentally injured thereby, a causal connection between the employment and his injury is established; (2) a claimant seeking compensation for the death of his decedent is required to show, *inter alia,* that the injury complained of was the proximate cause of the death; (3) in the event of disability or death resulting from heart injury or heart attack due to extraordinary conditions in the employment, or due to overexertion in performing the duties of the employment, the test of compensability (and proximate cause) is whether the unusual exertion precipitated the death or disability so as to bring it about at a time substantially earlier than it would have occurred normally; and (4) questions of proximate cause relating to the compensability of injuries are normally for the trier of fact.

It will be observed that the first paragraph of the above summary has to do with rules relating primarily to the definition of the character of compensable injuries, whereas the second paragraph has to do with subordinate rules relating primarily to proximate cause. It is believed that confusion of the definitive rules with the subordinate rules relating to cause leads to much of the confusion in interpreting the controlling decisions.

There was evidence herein of substantial probative value that the acute myocardial infarction, the injury from which Hamilton's death ensued, was incurred by him while shoveling snow in the course of his employment; that the injury was other than an injury occurring in the regualr course of nature from the usual and normal activities of his employment, even though one of his required duties, because it was not usual and normal for him to shovel snow intermittently for a period of more than five hours in temperatures of 17 or 18 degrees Fahrenheit; that the acute myocardial infarction was a physical or traumatic damage accidental in character and result in that in connection with Hamilton's intended act of shoveling snow the overexertion combined with the cold temperatures to cause a limi-

tation of flow of blood in the coronary circulatory system which limitation, operating in the presence of an already reduced circulation due to a pre-existing physical condition, produced an unforeseen, unexpected and unusual interruption or embarrassment of flow of blood, and thus oxygen, to the heart muscle which in turn caused the death of the heart muscle resulting in stoppage of the heart and the death of Hamilton; that because his employment required Hamilton to shovel the large area of the station premises under these temperature conditions he was subjected to a greater hazard than are the members of the general public, who are not similarly required to conduct themselves, and his injury was thus caused by and arose out of his employment; and that the unusual exertion under these temperature conditions precipitated his death so as to bring it about at a time substantially earlier than it would have occurred normally. There being such evidence it follows that there is substantial evidence of probative value of a compensable injury and the trial court did not commit error as claimed in appellant's seventh assignment of error in overruling his motion for a directed verdict at the close of all the evidence.

There being such evidence, the judgment of the trial court is not against the manifest weight of the evidence and contrary to law as claimed in appellant's ninth assignment of error. We have also carefully considered appellant's eighth assignment of error and find same without merit.

This court finding no error of the Common Pleas Court prejudicial to the appellant, the judgment of that court in favor of the claimant is affirmed.

*Judgment affirmed.*

MIDDLETON and YOUNGER, JJ., concur.