RANDALL, Appellee,

v.

MIHM, Admr., Appellant.

[Cite as *Randall v. Mihm* (1992), 84 Ohio App.3d 402.]

Court of Appeals of Ohio,
Clark County.

No. 2930.

Decided Dec. 21, 1992.

*James C. Ayers,* for appellee.

*Lee Fisher,* Attorney General, and *Yolanda L. Barnes,* Assistant Attorney General, Workers' Compensation Section, for appellant.

---

BROGAN, Judge.

Appellant, Patrick G. Mihm, Administrator, Ohio Bureau of Workers' Compensation, appeals from the judgment of the Clark County Court of Common Pleas which found that appellee, Dixie D. Randall, was entitled to participate in the Workers' Compensation Fund for the death of her husband, employee-decedent James Randall.

The underlying facts of the case are as follows. Appellee is the lawful dependent of the employee-decedent. On August 17, 1977, the decedent sustained an industrial injury while in the course of his employment with Cascade Corporation. The decedent injured his lower back and right hip while picking up material at work. The decedent's claim for workers' compensation benefits was allowed for the back and hip injuries. After two back surgeries, there was apparent nerve damage, which resulted in urinary retention, an atonic bladder, impotence, and pain in the left leg. Moreover, the decedent suffered from marked anxiety and depression. Those conditions were added to the claim as "flow through" injuries.

The decedent was a large man who weighed over three hundred pounds at the time of his industrial injury. The back surgeries failed to alleviate all of the pain and other symptoms associated with the injury. The decedent's physician, Dr. Cass, ordered a CAT scan to detect any remaining pathology associated with the back injury. At the time the decedent presented himself for the CAT scan, he weighed in excess of three hundred pounds. The radiologist could not perform the CAT scan procedure because the decedent was too heavy for the machine.

Dr. Cass informed the decedent that he would have to lose a significant amount of weight in order to have the CAT scan. Dr. Cass indicated to the decedent that she felt the CAT scan was necessary for a proper diagnosis of his continuing back problems. She further indicated to the decedent that loss of weight could possibly help to alleviate some of the negative symptoms associated with the back injury. As a result, the decedent attempted to lose weight through various means.

All of the approaches attempted by the decedent to lose enough weight for the CAT scan failed. Dr. Cass testified that the decedent "did everything he could to lose weight and he couldn't." Because of his failure to lose weight utilizing more

conventional methods such as dieting and pills, the decedent decided to undergo gastric plication surgery, more commonly known as "stomach stapling."

The gastric plication surgery was successful in allowing the decedent to lose the weight he needed for the CAT scan, but resulted in numerous medical complications which eventually led to his death.

As a result of the gastric plication surgery, the decedent suffered regurgitation syndrome, which caused a reflux of gastric contents into his throat and excessive vomiting. Moreover, he lost weight too fast because of a closure of the stomach and had to undergo two more procedures to alleviate this problem. Furthermore, the decedent suffered from gall bladder problems due to the accelerated weight loss, which resulted in additional surgery.

The decedent died on April 28, 1987. He went to sleep in his recliner and apparently expired sometime during the night. The following morning, his wife found him unconscious and called the paramedics. The paramedics were unable to resuscitate him. He was pronounced dead at Mercy Medical Hospital. The immediate cause of death was "cerebral anoxia," a term which describes death due to lack of oxygen to the brain. This condition was brought on by asphyxia caused when the decedent regurgitated and then aspirated the gastric contents of his stomach.

Appellee thereafter filed a claim to participate in the Workers' Compensation Fund for the death of the decedent. In the course of the administrative hearings, appellee's claim was allowed by the district hearing officer and disallowed by the regional board of review. Appellee then brought an appeal to the Clark County Court of Common Pleas pursuant to R.C. 4123.519. A trial *de novo* was conducted before a jury.

Appellant moved for a directed verdict at the close of appellee's evidence on the ground that appellee had failed to present sufficient evidence of a causal relationship between the decedent's industrial back injury and his death, or, in the alternative, for a directed verdict on the ground that appellee had failed to present sufficient evidence of a causal connection between the other allowed conditions and the decedent's death.

The trial court denied the first part of appellant's motion for a directed verdict, ruling that the only medical condition at issue in the case was the decedent's industrial back injury and its causal relationship to his death. The jury rendered a verdict in favor of appellee, finding that she was entitled to participate in the Workers' Compensation Fund. The trial court entered judgment accordingly.

Upon receiving judgment from the trial court, appellant filed a motion for judgment notwithstanding the verdict ("JNOV"), or, in the alternative, for a new

trial. The motion was denied by the trial court and appellant timely filed a notice of appeal.

Appellant does not proceed from a formal assignment of error, but instead argues that the trial court erred in overruling both that part of his motion for a directed verdict which concerned the causal connection between the decedent's industrial back injury and his death, and his motion for JNOV. In support of his argument, appellant states that the medical evidence presented by appellee was insufficient as a matter of law to establish that the death of the decedent due to asphyxiation was directly and proximately caused by his industrial back injury.

In order to establish a right to workers' compensation benefits for harm or death arising from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence that a direct and proximate causal relationship existed between his injury and the harm or death. See *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 55 O.O. 472, 125 N.E.2d 1. The definition of "proximate cause" in the workers' compensation context is the same as in the field of torts. *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 28 O.O. 50, 53 N.E.2d 1018. "Proximate cause" is a happening or event which as a natural and continuous sequence produces an injury without which the result would not have occurred. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828. When expert medical testimony is required in a case to establish a causal connection between the industrial injury and a subsequent physical condition, the proof must establish a probability and not a mere possibility of such causal connection. *Stacey v. Carnegie–Illinois Steel Corp.* (1951), 156 Ohio St. 205, 46 O.O. 93, 101 N.E.2d 897.

The standard for granting a directed verdict set out in Civ.R. 50 also applies to a motion for JNOV. See, *e.g., Posin v. ABC Motor Court Hotel* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334; *Ayers v. Woodard* (1957), 166 Ohio St. 138, 1 O.O.2d 377, 140 N.E.2d 401. Civ.R. 50 states in pertinent part:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party on that issue."

Where there is substantial evidence to support the case of the nonmoving party upon which reasonable minds could reach different conclusions, the motion for a directed verdict must be denied. *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 24 OBR 164, 493 N.E.2d 293. Neither the weight of the evidence nor the credibility of the witnesses is for the court's

determination in ruling on either a motion for a directed verdict or a motion for JNOV. *Id.* Moreover, questions of proximate cause relating to the compensibility of injuries in the area of workers' compensation are normally for the trier of fact. See, *e.g.*, *Hamilton v. Keller* (1967), 11 Ohio App.2d 121, 130, 40 O.O.2d 289, 295, 229 N.E.2d 63, 69.

In this case, appellee presented expert testimony from the decedent's family physician of almost ten years. Dr. Cass testified that the decedent's death was proximately caused by his industrial back injury. The relevant portions of Dr. Cass' testimony read as follows:

"Q. * * * And then I ask you if you have an opinion to a reasonable degree of medical probability, accepting the death certificate as the cause of death as you've discussed with us, as to whether the injury of August 17, 1977, proximately caused Mr. Randall's death on April 28, 1987. Do you have an opinion?

" * * *

"A. It is my opinion that it did.

"Q. And what is the reason for your opinion?

"A. I feel that Mr. Randall was a healthy, functional, fully active, dynamic individual whose health progressively went downhill following a back injury in 1977. That he was forced to undergo a procedure he didn't want, which was a gastric plication, which led to him regurging contents and aspirating, probably in his sleep, and leading to his demise.

"Q. Would you explain for us how the gastric plication and the CAT scan and his weight were involved in this procedure of his early demise?

"A. If he had not had the gastric plication he would not have aspirated. There is no question in my mind about that. And he would not have had the gastric plication if he had not had to have the CAT scan. The CAT scan—he may have possibly also been told that he would not have been able to have back surgery again if he didn't lose weight, but those two issues are tied very closely together. The first step in getting something done for his back was to get his weight down and that was why he did the gastric plication.

" * * *

"Q. Is it significant that he tried other modalities to bring his weight down prior to the gastric plication?

"A. He was as good a patient as I have ever had at trying to lose weight. He had never meant to be any smaller than he was. He was a big man, that was the way he was intended to be and he did everything he could to lose weight and he couldn't. He went and saw a nutritionist once a week, he dieted, he took diet pills, he was in a lot of distress and discomfort and he could not exercise. He did

swim. He is one of the few patients that I asked to swim and he actually went and swam. He still did not lose much weight. That's all very well documented also."

Appellant's expert testimony clearly contradicted Dr. Cass' testimony concerning the proximate cause of the decedent's death. Appellant placed into evidence the testimony of two expert witnesses who stated that the decedent's death was not proximately caused by his industrial back injury but by the gastric plication which the decedent underwent due to morbid obesity.

Applying the standard for directed verdict/JNOV motions to the evidence presented by appellee and permitting all reasonable inferences in favor of appellee from said evidence, we conclude that the trial court was correct in denying appellant's motion for a directed verdict and his motion for JNOV.

There was substantial testimony offered by Dr. Cass regarding the proximate cause of the decedent's death. Dr. Cass testified that the decedent's industrial back injury necessitated surgeries, which did not alleviate the pain and other symptoms. She testified that she believed that the CAT scan was necessary to diagnose any remaining pathology in the back. She testified that, for the decedent, the gastric plication was the only way he could lose enough weight for the CAT scan. Finally, she testified that the gastric plication caused the decedent's death by his aspiration of gastric contents.

In essence, Dr. Cass testified to a reasonable degree of medical probability that "but for" the decedent's industrial back injury he would not have had the gastric plication which caused him to aspirate and die. Dr. Cass related a chain of events beginning with the back injury in 1977, and leading to the order for a CAT scan and the gastric plication surgery, which she clearly believed led inexorably to the decedent's death. The differing versions of causation offered by the parties presented a clear issue of fact upon which reasonable minds could have disagreed.

Because reasonable minds could have come to different conclusions upon the determinative issues when considering the evidence in this case, and because it was for the jury to weigh the credibility of the expert testimony, the trial court correctly denied appellant's motions, and the assignments of error are therefore overruled.

Accordingly, the judgment of the Clark County Court of Common Pleas shall be affirmed.

*Judgment affirmed.*

WOLFF, J., concurs.

FAIN, P.J., concurs in judgment only.

FAIN, Presiding Judge, concurring in the judgment.

Not every causal chain is direct and proximate. In this case, if the only causal chain linking the decedent's death with his work-related back injury were the fact that a gastric plication, necessary in order for the decedent to lose the necessary weight to be able to undergo a diagnostic CAT scan, caused the decedent's death, I would find as a matter of law that this was not sufficiently direct to permit recovery under the workers' compensation statute. However, I am satisfied with the shorter and more direct chain represented by the decedent's weight loss having been prescribed as being likely to alleviate his work-related back injury. In my view, this was a sufficiently direct and natural chain of causation to get to the jury. Accordingly, I concur in the judgment affirming the judgment of the trial court.