OPINION
Ebco Manufacturing Company, defendant-appellant ("Ebco"), appeals (1) the May 28, 1998 judgment of the Franklin County Court of Common Pleas journalizing the jury's verdict in favor of John Sadinsky, plaintiff-appellee; and (2) the December 3, 1998 judgment of the Franklin County Court of Common Pleas overruling Ebco's motion for judgment notwithstanding the verdict and overruling Ebco's motion to strike testimony of appellee's expert, Dr. Vargo, and for a directed verdict.
Appellee was employed at Ebco for nineteen years. On April 12, 1995, appellee suffered an industrial injury while attempting to slide and lift a fifteen-foot piece of steel. On April 13, 1995, appellee consulted Dr. Ronald Vargo, complaining of pain in his low back that traveled down his left leg. A workers' compensation claim was subsequently allowed for acute lumbosacral sprain/strain and sacroiliac strain primarily on the left side. After being off work for several weeks in May 1995, appellee returned to his employment.
Appellee again returned to Dr. Vargo at the end of August 1995. During this office visit, appellee told Dr. Vargo that he had "no real pain" but had a "nagging ache" in his back. Dr. Vargo referred appellee to Dr. Paul Martz, a neurosurgeon. Dr. Martz performed an MRI, which showed that appellee suffered from bulging discs at two levels in his back.
Appellee requested that the Bureau of Workers' Compensation additionally recognize his claim for a herniated disc at L4-5. The district hearing officer and the staff hearing officer both allowed the claim. Ebco appealed the allowance of the herniated disc at L4-5 to the Franklin County Court of Common Pleas, arguing that there was no proof of a causal relationship between the herniated disc and the industrial injury suffered on April 12, 1995.
A jury trial was commenced on April 27, 1998. Dr. Vargo testified that to a reasonable degree of medical probability the herniated nucleus on the MRI scan and the pain that radiated down appellee's leg was related to his injury on April 12, 1995. The jury unanimously found that appellee suffered a herniated disc at L4-5 and that the herniated disc was proximately caused by the industrial injury suffered on April 12, 1995. The trial court journalized the jury's decision on May 28, 1998. On June 10, 1998, Ebco filed a motion for judgment notwithstanding the verdict, which was overruled on December 3, 1998. Ebco now appeals the jury's finding and the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict, asserting the following assignments of error:
[First Assignment of Error:]
 The Trial Court erred in denying Appellant's Motion for a Directed Verdict and subsequent Motion for Judgment Notwithstanding the Verdict as Plaintiff failed to establish through expert medical testimony the requisite element of causation.
[Second Assignment of Error:]
 The Trial Court erred in admitting a medical expert's testimony as to causation where the expert admitted he never performed the necessary tests to confirm a relationship between the alleged condition and the alleged symptoms.
[Third Assignment of Error:]
 The Trial Court erred in admitting a medical expert's testimony as to causation where the expert was unable to diagnose the alleged condition because the expert never found any clinical symptoms of that condition.
We will first address Ebco's second and third assignments of error because they both relate to the single issue of whether Dr. Vargo's opinion was admissible as expert testimony to prove proximate cause. The admissibility of expert opinion testimony is committed to the sound discretion of the trial court and will provide a basis for reversal on appeal only upon an abuse of discretion which amounts to prejudicial error. Bostic v. Connor
(1988), 37 Ohio St.3d 144. Deference to the trial court is particularly appropriate upon the determination of whether a witness is qualified to render an expert opinion. State v.Williams (1992), 80 Ohio App.3d 648, 655.
Further, "[i]n order to establish a right to workers' compensation benefits for harm or death arising from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence that a direct and proximate causal relationship existed between his injury and the harm or death."Randall v. Mihm (1992), 84 Ohio App.3d 402, 406, citing Fox v.Indus. Comm. (1955), 162 Ohio St. 569. "Proximate cause" is defined in the area of workers' compensation the same as it is defined in torts. Aiken v. Indus. Comm. (1944), 143 Ohio St. 113. "Proximate cause" is a happening or event which as a natural and continuous sequence produces an injury without which the result would have not occurred. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585. "When expert medical testimony is required in a case to establish a causal connection between the industrial injury and a subsequent physical condition, the proof must establish a probability and not a mere possibility of such causal connection." Randall, supra, at 406. Proximate cause is an issue for the trier of fact. Strother v. Hutchinson (1981), 67 Ohio St.2d 282,288.
Dr. Vargo testified that appellee came to him on April 13, 1995 with complaints of low-back pain of one day's duration as a result of trying to lift and slide a piece of steel at work. Appellee reported to Dr. Vargo that the back pain traveled down his left leg. Dr. Vargo's examination revealed an acute lumbar strain with indications of sudden, sharp pain travelling down appellee's left leg. X-rays taken at that time revealed a normal lumbar spine with a normal bony structure. Dr. Vargo described appellee's complaints as follows:
 * * * Some days he would come in, for example, and it would be, you know, some tightness in his low back. And then another visit, it says aching. But when he gets to doing anything, pain comes back. On [May] 17th, * * * we thought we had plateaued [sic] * * *.
Dr. Vargo again saw appellee on August 29, 1995, and appellee was complaining of a "nagging ache" in his low back. Dr. Vargo found appellee had tenderness and restricted motion in his low back. He again saw appellee on October 4, 1995, with appellee complaining that his low back was "really sore," and Dr. Vargo found a lot of pain in the lumbosacral area with tenderness to palpation. Because appellee was not improving, and possibly regressing, Dr. Vargo referred him to Dr. Martz, an orthopedic specialist.
Appellee had an MRI scan of his lumbar spine on December 12, 1995. The MRI report indicated that at the L4-L5 level there was a herniation of the disc to the left. Dr. Vargo testified that the disc herniation to the left clinically fit the indication of pain that traveled down appellee's left leg. Dr. Vargo stated that this disc herniation would have contributed to the fact that appellee was still experiencing pain concentrated in his low back. After reviewing the MRI report, Dr. Vargo changed his diagnosis. He stated that based upon the MRI report, he filled out a form that asked for the addition of a diagnosis of a herniated lumbar disc. Dr. Vargo also stated that he normally relies upon reports and MRIs in his treatment of patients. Dr. Vargo testified that he did not find any nerve deficit in appellee's leg upon physical examination and did not find any radicular signs or loss of reflexes before the MRI was ordered. He further stated that the MRI did not reveal whether the L4-5 herniated disc was traumatically induced.
Dr. Vargo testified that he based his findings upon appellee's complaint of left leg pain, but he also admitted that left leg pain can be caused by sciatic nerve pain, which would be unrelated to the herniated disc at the L4-5 level. He did not know whether appellee had an impingement on a nerve. He was not able to diagnose a herniated disc at L4-5 himself and was depending upon the MRI findings. He stated that it was only "possible" that the herniated disc could have been present before the April 12, 1995 injury.
Dr. Vargo was then asked the following hypothetical question:
 Q. * * * I want you to assume that on or about April 12, 1995, Mr. Sadinsky, while trying to slide a fifteen-foot piece of steel, and as he was sliding it, he was lifting it from a fork lift and felt immediate and severe pain in his low back with pain down into his left leg.
 You may assume further, Doctor, that prior to April 12, 1995, Mr. Sadinsky never had pain radiating from his back into his leg.
 You may also consider, Doctor, the testimony you gave here today concerning your history, findings, diagnosis, treatment and including the MRI exam.
 And I'll ask you whether you have an opinion based upon a reasonable medical probability as to whether or not the extruded disc at L4-5 was proximately caused by the injury of April 12, 1995. * * * What is your opinion, Doctor?
 A. It is my opinion that the herniated nucleus on the MRI scan and the pain that radiated down John Sadinsky's leg was related to his injury on April 12th, 1995.
 Q. Was that relationship by reasonable medical probability?
A. Yes, it is.
Dr. Vargo stated that he believed that the herniated disc was caused by the injury on April 12, 1995, because, if appellee would have had a herniated disc prior to his industrial injury, he would have had radicular symptoms and/or neurological symptoms and would have not gone without seeking treatment.
Ebco argues in its first assignment of error that Dr. Vargo failed to establish that appellee's herniated disc was caused by his workplace injury because he failed to perform an EMG, which could have established a causal connection. Ebco's specific reasons as to why the evidence was inadmissible pursuant to Evid.R. 702 and 703 are unclear but seem to be based in large part upon Evid.R. 703, which provides:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing.
Although Dr. Vargo testified that an EMG would indicate whether a patient suffers from nerve-root impingement, that Dr. Vargo never performed an EMG to make such connection does not necessarily render his opinion inadmissible. Dr. Vargo testified specifically as to the basis for why he believed there existed a causal link between the injury and subsequent pain on April 12, 1995, and the herniated disc. Dr. Vargo stated that the MRI findings indicating there was a herniated disc to the left would be clinically consistent with the indication of severe pain that traveled down appellee's left leg after the injury. Dr. Vargo also stated that the disc herniation would be consistent with the fact that appellee was still experiencing pain concentrated in his lower back. Dr. Vargo further testified that he believed that the herniated disc was caused by the injury on April 12, 1995, because, if appellee would have had a herniated disc prior to his industrial injury, he would have had radicular symptoms and/or neurological symptoms and would not have gone for so long without seeking treatment.
Ebco asserts that these bases for supporting causation are impermissibly speculative; however, Dr. Vargo based his opinion on a reasonable medical probability and had specific findings that he cited to support his opinion, including the MRI, his treatment, appellee's subjective complaints of pain, and appellee's history of pain. An expert's opinion is generally competent only if the expert holds that opinion to a reasonable degree of certainty. State v. English (1991), 77 Ohio App.3d 371,381; State v. Benner (1988), 40 Ohio St.3d 301, 313. Importantly, Ebco failed to present any convincing evidence, medical testimony, or other authority indicating that it is impossible for a doctor to render a medical opinion to a reasonable degree of medical probability using only the information and observations utilized by Dr. Vargo. Whether such reasoning and cited bases were sufficient to establish proximate cause is within the jury's consideration. The jury was able to observe Dr. Vargo's demeanor on videotape and could make a determination as to whether they believed he was credible in his opinions as to causation.
Further, the facts upon which Dr. Vargo relied were perceived by him or admitted into evidence as required by Evid.R. 703. In coming to his opinion, Dr. Vargo relied upon his personal examination of appellee and the medical records and MRI report, which he regularly relied upon in his practice and were admitted into evidence. This is sufficient to satisfy the requirements of Evid.R. 703. Although he testified that an EMG is the typical test utilized to conclusively show nerve-root impingement, he was still able to present a medical opinion to a reasonable medical probability based upon the medical evidence, his own perceptions, and the MRI exam. Therefore, Ebco's second assignment of error is without merit and overruled.
Ebco argues in its third assignment of error that Dr. Vargo's testimony was inadmissible because he was unable to diagnose a herniated disc. Ebco specifically claims that Dr. Vargo's opinion was inadmissible pursuant to Evid.R. 702 and 703 because he perceived no clinical signs and made no diagnosis of a herniated disc. Although Dr. Vargo did testify that he personally observed no clinical signs of a herniated disc upon physical examination, he specifically testified that he changed his diagnosis after receiving the MRI findings:
 Q. After you received and reviewed the MRI report, did you change your diagnosis any?
* * *
 A. Yes. We filled out a form that basically asks for the addition of a diagnosis of — as far as herniated lumbar disc[.]
* * *
Q. Okay. And that was based on what, Doctor?
A. Based on the MRI report.
Further, although Ebco concentrates on the fact that Dr. Vargo was unable to diagnose a herniated disc himself and was forced to rely upon the MRI findings by another doctor in reaching his conclusions, it is well settled that a doctor may base his opinions on a report made by another doctor as long as such report is admitted into evidence. Kraner v. Coastal Tank Lines (1971),26 Ohio St.2d 59. The MRI report, although not completed by Dr. Vargo, was admitted into evidence and, thus, could be relied upon by Dr. Vargo in formulating his opinion to a reasonable degree of medical probability. Dr. Vargo also stated that MRIs are the best evidence to indicate a herniated disc, which supports his reliance upon such test in his diagnosis. Therefore, we find that the trial court did not err in admitting Dr. Vargo's expert testimony, and Ebco's third assignment of error is overruled.
Ebco argues in its first assignment of error that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict because appellee failed to establish causation through expert medical testimony. In addressing motions for directed verdict and judgment notwithstanding the verdict, courts are guided by the following principles:
 "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. * * *"
Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 318, quoting Posin v. A.B.C. Motor Court Hotel,Inc. (1976), 45 Ohio St.2d 271, 275.
Furthermore, neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling on said motions. Id. Although in reaching a decision on such motions it is necessary to review and consider the evidence, such decisions present a question of law as they test the legal sufficiency of evidence. Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84,90.
In the present case, Ebco's only basis for its assignment of error is that because Dr. Vargo's testimony was inadmissible and it was the only medical evidence presented on the issue of causation by appellee, the trial court should have granted its motions for directed verdict and judgment notwithstanding the verdict. However, because we have found in assignments of error two and three that the trial court did not err in admitting the expert testimony of Dr. Vargo, Ebco's first assignment of error must fail. Given our finding that Dr. Vargo's expert testimony was properly admitted, construing the evidence most strongly in favor of appellee, we find that reasonable minds could have reached different conclusions as to causation, and the motions were properly denied. The weight and credibility to be applied to Dr. Vargo's opinion as to causation were not for the trial court's determination pursuant to these motions but was within the province of the jury. Apparently, the jury chose to believe Dr. Vargo's testimony. Therefore, Ebco's first assignment of error is overruled.
Accordingly, Ebco's assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT and KENNEDY, JJ., concur.