DECISION
On September 3, 1997, ten-year-old Jeremy Sullivan was taken by his mother, appellant, Stephanie Seagle, to the emergency room of Children's Hospital with complaints of abdominal pain. A resident and an attending physician examined Jeremy. An X-ray and urinalysis were ordered. The attending physician prescribed Tylenol and Maalox, and sent Jeremy home with instructions to return if symptoms worsened.
On September 4, 1997, appellant and Jeremy returned to the emergency room because Jeremy complained that the pain was worse. Again, Jeremy was examined by both an intern and an attending physician. The attending physician did not order any diagnostic tests but did see the X-ray from the previous day. Jeremy was diagnosed with constipation and sent home with instructions to ingest Agoral and milk of magnesia, and to return if symptoms worsened.
The testimony at trial indicated that, from September 4 through September 7, Jeremy's condition remained approximately the same; however, on September 7, at approximately 11:30 p.m., appellant called the Children's Primary Care Clinic help line because Jeremy was not feeling better. She was told to increase the amount of milk of magnesia and to call in the morning for an appointment at the clinic; however, appellant testified that she did not follow this advice.
At approximately 5:00 p.m., on September 8, Jeremy collapsed on the bathroom floor in great pain. Jeremy underwent surgery for a perforated appendix on September 9, and remained in the hospital for over two weeks to receive antibiotics. Three weeks after being released from the hospital, Jeremy had recovered from the illness.
Appellant filed a complaint on behalf of Jeremy alleging malpractice against appellees, Daniel J. Scherzer, M.D., the attending physician who treated Jeremy on September 4, 1997, and Children's Hospital, for negligence in failing to record in Jeremy's medical chart a second set of vital signs on September 4, and for the advice she received from the Children's Primary Care Clinic help line because the nurse did not advise her to take Jeremy to the emergency room at the time. A claim for loss of consortium, pecuniary damages, and past and future medical expenses and emotional distress resulting from such alleged negligence was also included.
At the close of appellant's case, appellees made a motion for directed verdict and the trial court granted the motion of Children's Hospital. At the close of his evidence, Scherzer again made a motion for directed verdict which the trial court granted. Appellant filed a notice of appeal and raises the following assignments of error:
 I. THE TRIAL COURT ERRED IN SUSTAINING APPELLEES' MOTIONS FOR DIRECTED VERDICT ON THE ISSUE OF PROXIMATE CAUSE BECAUSE APPELLANT ILLICITED [sic] COMPETENT EXPERT TESTIMONY, BASED ON REASONABLE MEDICAL CERTAINTY, THAT THE NEGLIGENT ACTS OF APPELEES' WERE THE DIRECT AND PROXIMATE CAUSE OF JEREMY SULLIVAN'S INJURIES.
 II. UNDER OHIO EVIDENCE RULE 706, THE TRIAL COURT ERRED IN NOT ALLOWING APPELLANT TO CROSS-EXAMINE APPELLEE SCHERZER AND APPELLEE'S WITNESS, DANIEL CHEN, M.D., WITH THE LEARNED TREATISE WRITTEN BY APPELEES' EXPERT WITNESS, STEVEN E. KRUG, M.D.
 III. THE TRIAL COURT ERRED IN NOT ADMITTING INTO EVIDENCE APPELLANT'S TRIAL EXHIBIT 3 BECAUSE THE DOCUMENT IS RELEVANT AS TO APPELLEE DR. SCHERZER'S FAILURE TO FOLLOW HOSPITAL PROTOCOLS.
By the first assignment of error, appellant contends that the trial court erred in sustaining appellees' motions for directed verdicts. The trial court found that appellant had failed to produce evidence that any alleged negligence was the proximate cause of Jeremy's injuries.
Civ.R. 50(A)(4) governs the standard for directed verdicts and provides that:
 * * * When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
In ruling on a motion for a directed verdict, a trial court is required to construe the evidence most strongly in favor of the nonmovant. Civ.R. 50(A)(4); Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284. The motion must be denied where there is substantial evidence to support the nonmoving party's case and reasonable minds may reach different conclusions. Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271,275. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon the motion. Id. A motion for directed verdict tests whether the evidence presented is legally sufficient to take the case to the jury. Wagner v. Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 294.
In paragraph one of the syllabus of Bruni v. Tatsumi (1976),46 Ohio St.2d 127, the Supreme Court of Ohio set forth the evidence that a plaintiff must provide in order to establish medical malpractice as follows:
 In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.
The appropriate standard of care must generally be proven by expert testimony. Bruni, at 131-132. An essential element of a medical malpractice claim is proof that the injury was proximately caused by the failure of the physician to adhere to the standard of care. Proximate cause is "`a happening or event which as a natural and continuous sequence produces an injury without which the result would not have occurred.'" Hitch v. Ohio Dept. of Mental Health (1996),114 Ohio App.3d 229, 240, quoting Randall v. Mihm (1992),84 Ohio App.3d 402, 406. In this case, the trial court found that appellant failed to prove that Jeremy's injury was proximately caused by the alleged failure of the physician to adhere to the standard of care.
Appellant's expert, Albert Weihl, testified that Dr. Scherzer did not meet the standard of care in treating Jeremy on September 4, because he should have done one of three things, including: admitting Jeremy for further observation; or consulted with a surgical specialist; or completed a work-up, including blood tests, potentially X-rays and then consulted with a surgeon. Weihl did not fault Scherzer for failing to diagnose Jeremy's appendicitis but for failure to do more testing which would have enabled him to diagnose the appendicitis sooner. Weihl testified as to the difference between surgeries when the surgery is completed before, rather than after, an appendix perforates. If the operation occurs before the appendix perforates, the operation is fairly simple, involving a small incision or potentially a laparoscopic incision, usually only a hospital stay ranging from several hours to three days and only a few doses of intravenous antibiotics. In contrast, after the appendix perforates, the surgery involves a large incision from the middle of the abdomen, a hospital stay ranging from weeks to months and high doses of intravenous antibiotics for several weeks.
Appellant testified that Jeremy is not as active as he was before the surgery. Jeremy testified that he is embarrassed by the big scar. Weihl testified that Jeremy's scar is permanent and, as compared to the less extensive surgery, he is at a significant risk for increase in adhesions which cause bowel obstructions.
Weihl testified that he believed that Jeremy had appendicitis on September 4, and even had symptoms of peritonitis on that day. His symptoms remained unchanged from September 4 through September 8, when he collapsed; however, on cross-examination, Weihl testified that he could not say whether, on September 4, Jeremy's appendix was inflamed or perforated. He did testify that, on September 4, Jeremy did not have peritonitis to the extent he had it on September 8; however, he could not state whether, if surgery had been performed on September 4 or 5, Jeremy would have required the less, rather than the more, extensive surgery performed on September 9.
Although Weihl testified that Scherzer did not meet the standard of care, because Weihl could not state whether Jeremy's appendix was inflamed or perforated on September 4 or 5, and whether, if surgery had been performed then, Jeremy would have required the less extensive surgery, appellant failed to prove that the failure of Scherzer to admit Jeremy for further observation or consult with a surgical specialist or complete a work-up caused Jeremy an injury since there was no evidence concerning when Jeremy's appendix perforated. There was no evidence regarding how extensive an operation Jeremy would have needed if Scherzer had followed the standard of care and surgery was performed immediately. Thus, there was no causal connection between the medically negligent act and the injury sustained, and the trial court did not err in directing a verdict in favor of Scherzer.
Appellant also contends that the trial court erred in sustaining the motion of Children's Hospital for a directed verdict. Appellant's medical malpractice claim is based in part upon the failure to record a second set of vital signs on September 4, 1997. Appellant argues that the failure to take a second set of vital signs was a diagnostic tool which could have helped the doctors determine the proper course of action in diagnosing the patient. Appellant also contends that the advice given by the Primary Care Clinic when appellant called on September 7, 1997, was negligent. Weihl testified that the appropriate advice was to return to the emergency room; however, once again, there was no testimony that Jeremy would not have needed the more extensive surgery if he had been diagnosed with appendicitis and surgery performed on September 4, 1997, since there is no evidence as to when the appendix perforated.
Appellant contends that Corwin v. St. Anthony Med. Ctr. (1992),80 Ohio App.3d 836, is applicable to these facts. In Corwin, the plaintiff consulted with William R. Blesch, M.D., on October 1, 1988, for complaints of nausea, vomiting, diarrhea and stomach pain, and was admitted to the hospital for observation where he remained for the next several days. Blesch consulted with a surgeon who ordered a CT scan and X-rays, which indicated that he had a small bowel obstruction. During surgery to remove the obstruction on October 5, 1988, it was discovered that plaintiff had a ruptured appendix and an abscess. Plaintiff filed a medical malpractice action against Blesch, the hospital, the surgeon and Surgical Associates of Columbus. The hospital, the surgeon and Surgical Associates of Columbus were voluntarily dismissed. At trial, as in this case, the plaintiff sought to prove that Blesch's failure to timely diagnose his appendicitis caused the rupture of his appendix resulting in a bigger risk to his life, an extended hospital stay, an enlarged incision, and pain and suffering. The trial court granted a directed verdict in Blesch's favor on the issue of damages, finding that plaintiff did not present competent expert testimony to establish damages with reasonable certainty. This court reversed the judgment finding that the expert testified to the consequences of surgery from a perforated appendix such as a larger scar, increased pain and a longer convalescence, as well as plaintiff's testimony that he had experienced pain and suffering. This court found that testimony sufficient on the issue of damages to allow reasonable minds to reach different conclusions; however, this court did recognize that the plaintiff may have a substantial problem in establishing the other elements of negligence. Corwin only determined the issue of damages, and is not applicable here because the issue in this case is proximate cause.
Appellant also argues that Reinhardt v. Univ. of Cincinnati Med. Ctr. (Dec. 13, 1994), Franklin App. No. 94API04-603, unreported, is helpful. In Reinhardt, two experts testified and presented different theories as to the proximate causation issue. This court found that reasonable minds could come to more than one conclusion upon the evidence presented and, thus, the trial court properly overruled a motion for a directed verdict. In this case, appellant fails to recognize that, because her expert, Weihl, could not testify that Jeremy's appendix had not already perforated by September 4, there was no evidence that any delay in diagnosis allowed the appendix to perforate later and, thus, required the more extensive surgery on September 9. Appellant failed to demonstrate that Scherzer's alleged breach of the standard of care caused Jeremy's injuries, and the trial court did not err in directing a verdict in favor of Children's Hospital. Appellant's first assignment of error is not well-taken.
By the second assignment of error, appellant contends that the trial court erred in not allowing appellant to cross-examine Scherzer and Daniel Cohen, M.D., with a treatise written by Steven E. Krug, appellees' expert witness. By the third assignment of error, appellant contends that the trial court erred in not admitting into evidence appellant's Exhibit 3 because the document was relevant to Scherzer's failure to follow hospital protocols. Given our disposition of the first assignment of error, these assignments of error are rendered moot.
For the foregoing reasons, appellant's first assignment of error is overruled, the second and third assignments of error are overruled as moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _____________________ BOWMAN, J.
BRYANT, P.J., and BROWN, J., concur.